Mackie v. Mott.

*Appeal from Caldwell Circuit Court.*—HON. E. J. BROADDUS, Judge.

STRICKEN FROM DOCKET.

*C. A. Loomis* and *W. J. Wyatt* for appellant.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) There is nothing save the record proper in this case for consideration. It does not appear that the bill of exceptions was ever signed by the trial judge.

SHERWOOD and BURGESS, JJ., concur.

---

MACKIE v. MOTT *et al.*, *Appellants.*

Division Two, November 21, 1898.*

1. **Partnership:** EVIDENCE OF FORMATION. The formation of a co-partnership is one of intention of all the parties thereto, which must be determined from the contract itself and the surrounding circumstances.

*NOTE.—Decided July 6, 1898. Motion for rehearing filed; overruled November 21, 1898.

2. ———: ———: TO SHARE IN PROFITS OF SALE OF LAND.  In order to constitute a partnership in the net proceeds arising from the management and improvement and sale of real estate, it is not necessary that each member of the partnership should have the power to dispose of said real estate.   This is not the test.

3. ———: ———: ———: OTHER TESTS.  Neither does participation in the profits and losses necessarily constitute a partnership.

4. ———: ———: ———: CASE STATED.  Defendants were owners of four lots on which they desired to erect dwelling houses.  Plaintiff asserts that it was agreed between them that defendants would furnish the money for materials and labor, he would erect the houses, which were to be sold and the profits above the cost of the lots and houses divided equally between him and the two co-tenants. He constructed the houses, using $976 of his own money, and brought suit to enforce the partnership agreement and for an accounting.  Defendants ·claimed plaintiff agreed to erect the houses as a contractor, and submitted a bid to do the work for $11,753.   The evidence is reviewed at length and the conclusion reached that it does not show that defendants ever intended to enter into a copartnership with plaintiff for the erection of the houses and a division of the profits.

*Appeal from St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

REVERSED.

*Hornsby & Harris* for appellants.

(1) The relation of partnership does not exist between persons associated in a˙ common undertaking unless each one has the right to manage the whole business, and to dispose of the entire property involved in the enterprise for its purposes, in the same manner and with the same power as all can when acting together. *Donnell v. Harshe,* 67 Mo. 170; *Musser v. Brink,* 68 Mo. 242; *Ashby v. Shaw,* 82 Mo. 76; *McDonald v. Matney,* 82 Mo. 358; *Thompson v. Holden,* 117 Mo. 118; *Campbell v. Dent,* 54 Mo. 325; *Gill v. Ferris,* 82 Mo. 156; *Bank of Osceola v. Outhwaite,* 50

Mo. App. 124; *Lockart v. Forsythe*, 49 Mo. App. 654; *Rankin v. Fairley*, 29 Mo. App. 587; *State to use v. Donnelly*, 9 Mo. App. 519; *Newburger v. Friede*, 23 Mo. App. 631; 17 Am. and Eng. Ency. Law, 845 and 830; *Emmons v. Bank*, 97 Mass. 230; *Hawkins v. McIntyre*, 45 Vt. 496. (2) An agreement by an owner of lands to make them partnership property, or to take in a partner and to confer upon him the rights of a partner in the property, is void under the statute of frauds if not in writing, as it is in effect a sale of an interest in lands. 17 Am. and Eng. Ency. Law, 898 and 963; 8 Am. and Eng. Ency. Law, 701; Story, Partnership [7 Ed.], sec. 83; *Smith v. Burnham*, 3 Sumn. 435; Ebbart's Appeal, 70 Pa. 79; Everhart's Appeal, 106 Pa. St. 349; *Bird v. Morrison*, 12 Wis. 138; *Clarke v. McAuliffe*, 81 Wis. 104; *Raub v. Smith*, 61 Mich. 543; *Brosnon v. McKee*, 63 Mich. 454. (3) Respondent having given appellants a written bid, which was accepted by appellants, all prior negotiations are conclusively presumed to be embodied in such writing; any prior verbal agreement as to respondent receiving a share of the profits is supplanted by the subsequent written agreement to do the work for a fixed sum. Best Principles of Evid., 229, Thayer Cases on Evid., 900; *Railroad v. Cleary*, 77 Mo. 634. (4) If no partnership exists between the parties, respondent can not recover in this action; the plaintiff's claim if it exists at all is on contract or in tort, and the petition being one in equity and he failing to show a case in which he is entitled to equitable relief, the petition should be dismissed. *Humphrey v. Milling Co.*, 98 Mo. 542; *Rush v. Brown*, 101 Mo. 586; *Muenks v. Hunch*, 90 Mo. 500; *Wetmore v. Crouch*, 55 Mo. App. 441; *Little v. Cooper*, 11 N. J. Eq. 224; *Smith v. Bodine*, 74 N. Y. 30; Story, Eq. Jurisp., sec. 458; Pomeroy, Eq. Jurisp., sec. 1421; *Uhlman v. Ins. Co.*, 109 N. Y. 421.

*Dawson & Garvin* for respondents.

(1) If in fact the parties intended to become partners in improving and marketing the Flad avenue property, plaintiff can in equity enforce the rights of a partner against defendants. Story on Part. [7 Ed.], sec. 49; *Campbell v. Dent*, 54 Mo. 332; *Rankin v. Fairly*, 29 Mo. App. 587; Parsons on Part. [4 Ed.], sec. 54; 1 Bates, Law of Part. [Ed. 1888], sec. 17; *McDonald v. Matney*, 82 Mo. 366; *Priest v. Chouteau*, 85 Mo. 405. (2) After the partnership venture has been executed and performed equity will compel an accounting without regard to the manner in which the partnership was formed. *Hunter v. Whitehead*, 42 Mo. 524; *Bush v. Bush*, 89 Mo. 367; *Altman v. Booth*, 95 Mo. 389; *Springer v. Cabell*, 10 Mo. 643; *Priest v. Chouteau*, 85 Mo. 407. (*a*) The statute of frauds does not apply. *Springer v. Cabell*, 10 Mo. 643; 17 Am. and Eng. Ency. Law, 899; *Buchner v. Ries*, 34 Mo. 357. (*b*) The necessity of the writing required by the statute may be waived and thereby the contract be made good. *Railroad v. Clark*, 121 Mo. 186. (*c*) This defense is waived unless pleaded. *Gardner v. Armstrong*, 31 Mo. 540; *Maybee v. Moore*, 90 Mo. 343. (3) It is a rule of this court that in equity cases, it will defer somewhat to the finding of the chancellor, and in case of conflict of testimony, unless this court is prepared to say the finding of the chancellor is against the preponderance of the evidence or is incorrect, it will affirm the case, even though errors may have been committed on trial. *Bartlett v. Brown*, 121 Mo. 364; *Gottschalk v. Kircher*, 109 Mo. 182; *Bank v. Murray*, 88 Mo. 196; *Estes v. Fry*, 94 Mo. 272; *Sayer v. Devore*, 99 Mo. 447; *Gill v. Ferriss*, 82 Mo. 168.

BURGESS, J.—This is a suit by plaintiff who alleges in his petition that he was a partner with defendants under a verbal agreement, by the terms of which he was to superintend the completion of four partly constructed houses belonging to defendants, which upon their completion were to be sold, and the net proceeds or profits divided equally between the three; for a dissolution of the partnership, an accounting, a sale of the property, and a distribution of the profits if any.

Defendants deny the partnership and allege that plaintiff did the work on the houses as contractor with them.

The evidence adduced by plaintiff was substantially as follows:

Plaintiff in his own behalf testified in substance that in the fall of 1893 defendant Mott stated to him that he, Mott, had four houses on this property described in plaintiff's petition, which one Rowe had started to build for him and had abandoned, and Mott asked plaintiff to give him an estimate of the amount required to finish these houses. Mott proposed to give plaintiff one-third of the profits to be derived from the houses if plaintiff would give his time and attention to their completion, defendants furnishing the money required to complete the same; when the houses were completed they were to be sold and the profits, after reimbursing Mott and Sauer, were to be divided equally between the three. Plaintiff and defendant agreed then to this and plaintiff started to work on the houses. There was at that time a deed of trust for about $5,500 on the property, also mechanics' liens amounting to about $1,500. Defendants were to borrow sufficient money on the property to pay off these debts and to complete the houses; they were to

borrow $4,000 on each house and lot, $16,000 in the aggregate. This money was borrowed from Farish on the two east houses and from M. D. Lewis on the west house. Part of the money borrowed from Farish was used in paying off the mechanics' liens and the existing deed of trust held by O'Reilly. The balance of the money borrowed by defendants of Farish and Lewis was used in completing the houses. An additional loan of $4,500 was subsequently made of Carpenter to be used in completing the houses. The cost to complete the houses when witness took charge was $13,466, and $6,200 was the amount of existing incumbrances. When defendant Mott asked plaintiff to make an estimate of the cost to complete these four buildings Mott asked him to make a written bid so that he, Mott, could show it to another builder named Wright who, Mott said, wanted to figure on the work, and Mott stated that he wanted to be able to show Mackie's bid to Wright. so that Wright would see that Mott had given him a chance, but that he had failed to get the job. Mott did not want Wright to get the job, but did not want to offend him. So plaintiff then made Mott a bid to do the work for about $11,000.

When this money was borrowed from Farish and Lewis a bond was given to them against mechanics' liens.

When witness started on the work he received the plans and specifications, and suggested several changes which were agreed to by Mott. Defendant Sauer lived in Ohio and left the entire management of the property to his co-tenant, defendant Mott. Defendant Mott called to see the houses when the work was almost finished and seemed pleased. The first time witness knew that Mott claimed witness was doing the work on the houses as a contractor was when witness gave a man an order on Mott for some money, and Mott told

the man that he had overpaid Mackie on the contract. The actual cost of completing the houses was $13,466, of which $2,105 was for extras. The money was paid out by Mott, either by cash or by orders on Farish, Lewis and Carpenter. Several of the sub-contractors having bills unpaid enforced their liens and .obtained judgments against the property. Some of these have been paid by Mott; witness paid $1,500 or $1,600 out of his own funds on account of these houses.

On cross-examination plaintiff testified that the agreement with defendant Mott, whereby he was to be a partner in the houses, was all made prior to his giving the written bid or estimate to Mott. Mott and Sauer exchanged three of these Flad avenue houses which were encumbered for $12,000, with Mr. James M. Carpenter, receiving from Carpenter, a house and lot on Morgan street, which they valued at $11,000, but which witness told Mott was not worth $11,000. This sale was made through the efforts of witness, and in order to get money to clear the debts on the Flad avenue houses. After this exchange $4,500 was borrowed on the Morgan street property to pay off debts on the Flad avenue houses. These houses were completed in August, 1894. By witness' agreement with defendants he was to finish the houses, they furnishing the money and he to get one-third of whatever margin or profit remained, after everything had been paid, deed of trust and all.

Mott and Sauer borrowed $16,000 on the houses, and with this they paid off the existing O'Reilly deed of trust and all existing lien claims, and the balance of the money was paid out direct by the parties who made the loans on Mott's orders for labor and material. Witness had to get an order from Mott for everything he wanted. Witness would give an order and get Mott to

sign it and the party holding the order would then present it to Lewis or the others and get the money.

Although the houses were finished in August, 1894, witness had the keys until the spring of 1895. He notified Mott, January, 1895, that the keys were at witness' office. Witness held the keys subject to the order of Sauer and Mott. The houses were vacant and idle during the time. The partnership agreement between the plaintiff and defendant was not in writing. The money that witness received from Mott on account of these buildings was deposited in bank, in witness' individual account, and checked out as he used it to pay for labor, etc.

Witness identified the papers subsequently offered in evidence by defendants, namely, receipt dated April 28, 1894; order dated May 2, 1894; order for $300 dated May 1, 1894, signed by witness; two bonds dated April 14, 1894, signed by witness; a receipt dated June 22, 1894, signed by witness; a bid or proposition dated February 8, 1894, in witness' handwriting, but denies that the word "contractor" after his signature on the receipt of April 28, 1894, is in his handwriting.

Witness states that the Flad avenue house remaining unsold, is worth $7,000 or $8,000 "somewhere there."

W. J. Holbrook testified, on behalf of plaintiff: That he was in the real estate business; had several conversations with Mott and Mackie about the trade of three of the Flad avenue houses for Carpenter's Morgan street property; witness understood from Mackie and Mott that they and Sauer owned the Flad avenue property; they said that they were the owners. Witness acted as agent in making the trade. According to witness' recollection he did not know, until the contract for the exchange was signed, that the title to the Flad avenue property was in Mott and Sauer. The

Carpenter property on Morgan street was worth $10,-000, when this trade was made, in August, 1894, but has depreciated in value now; it might sell now for $8,750 or $9,000. The cash value of the Flad avenue houses at the time of the trade with Carpenter was about $6,750 each, and $7,000 for the corner house.

J. H. Farish testified for plaintiff: That he is a real estate agent in St. Louis. On the solicitation of plaintiff, witness considered the advisability of loaning $8,000 on two of the Flad avenue houses; he saw Mott about the matter. Witness made the loan through the Mississippi Valley Trust Company. From conversations with Mott and Mackie, witness learned that these Flad avenue houses "belonged to Mott and Sauer, and that the building contractors, who had the buildings originally left them for some reason in an unfinished condition, and that Mackie came to an agreement with Mott, if the money was furnished he would finish the houses and he was to get a certain interest, one-third, in the houses when they were sold." Witness loaned Mott and Sauer $8,000 on two of the Flad avenue houses, and retained his commissions out of the amount of the loan. Witness identifies the receipts signed by Mackie for money received by him of witness, and introduced in evidence by defendants. These receipts were delivered by Mackie to the Mississippi Valley Trust Company, who thereupon paid out the money to Mackie on witness' check. The conversations as to Mackie's interest in this property were sometimes in the presence of both Mackie and Mott and sometimes with Mackie alone.

W. J. Templeman testified: That he lived on Flad avenue adjoining the Mott and Sauer houses; that on one occasion Mott called on him in reference to witness' getting a purchaser for one of the houses,

and Mott introduced Mackie, saying, "He is interested with us in the construction of those houses."

John Brackett testified: That he did the stone work at the Flad avenue houses, for which work Mackie gave him an order on Mott who declined to pay it; Mott said, "You take that order back to Mackie and tell him to pay his own orders." He then went back to Mackie, who paid him.

Martrom D. Lewis testified, on behalf of plaintiff: That in 1894 he made a loan to Mott and Sauer of $4,000 on each of the two western Flad avenue houses; he never had anything to do with Mackie in the matter; he paid the money out on Mott's order, some to Mott himself, some to Mackie on orders from Mott, and some to material men, and $500 retained by witness to cover street improvements, and $200 retained as his commissions for negotiating the loans.

Plaintiff offered letters from J. W. Kerr, attorney for plaintiff to defendant Sauer, and letters from Sauer to Kerr, as follows:

"St. Louis, February 20, 1895.

"*Mr. Geo. H. Sauer, New Haven, Huron Co., Ohio:*

"Dear Sir:—I write you in reference to the matter between yourself, Mackie and Mott in reference to certain houses, corner Flad avenue or street. You will remember that Mackie was to put in his superintendence, labor and attention, that Mott was to furnish the money to complete the houses, all to be sold and the profit divided between yourself, Mackie and Mott. Now it turns out that Mott has failed to furnish the money, whereby Mackie was compelled in order to save the property and finish it up, to spend $10,550.95 received from Mott, and to advance the sum of $2,723.75 of his own money, total $13,274.70, leaving amount advanced by Mackie of $2,723.75.

"I have been to Mott several times to get him to reimburse Mackie but can get him to do nothing, he making one kind and another frivolous excuses for not doing so. Mackie offered to take a second mortgage or a secured note of any kind which he could get discounted, for he needs the money, but Mott stands still and refuses to do anything. All the houses are now complete and the last one is ready for sale but Mott will do nothing. The matter is placed in my hands and I told Mackie that before I sued, I would write to you and let you know the circumstances and see what you had to say. There are several hundred dollars more to be paid and there are mechanics' liens being filed therefor. Now if nothing is done I will have to put the matter in the court and have a receiver appointed and the property sold and proceeds applied. There is nothing else left for me to do. Please answer by return mail and oblige.      Yours truly,

JOHN W. KERR."

"NEW HAVEN, Huron Co., Ohio, Feb. 23, 1895. "*John W. Kerr, Esq., St. Louis, Mo.:*

"DEAR SIR:—Your communication of twentieth received this evening too late to reply, all mails having gone for to-day and on Sunday we have no mail, so you will understand delay in receiving reply. In regard to Flad avenue property, will say that am surprised at condition of affairs, have had no communication from Mott in regard to it since December 30, 1894, when he wired me, had a chance to sell both pieces property. I replied at once to go ahead and sell, and have been expecting daily to hear from him. On February 7, he wrote me from Jefferson City acknowledging receipt as Secretary of Building Association, and in letter he said he would write me about Flad avenue property in a day or two, since which time have heard nothing from him. So you see I know nothing about affairs, am

sorry to say. Trust you will delay action of any kind until I hear from Mr. Mott, to whom I sent copy of your letter and advised to settle matter immediately, and let me know at once his intentions and all about the matter. It seems to me there can be nothing complicated and an understanding should be arrived at easily. Believe Mackie will do what is right, and with same spirit he displayed when I saw him last, the trouble seems to be Mr. Mott's neglect. Hoping he will meet you soon after he gets my letter and arrange matters. I remain, Yours truly,        GEO. H. SAUER.

"Will write you as soon as I hear from Mott, if in a reasonable time, if not will write anyway. S."

"ST. LOUIS, Mo., March 2, 1895.

"*Mr. Geo. H. Sauer, New Haven, Huron Co., Ohio.*

"SIR:—In the matter of Mott, Sauer and Mackie there has been judgment mechanics' lien rendered for $183. And suit has been brought for a $700 lien, and a further suit for $329 lien—$1,212 judgment liens will soon be on the property. If possible don't delay, but get Mott and yourself to do something. What Mackie is anxious about is the actual money he advanced which under the contract should have been advanced by Mott. Can't an arrangement be made at once for a second mortgage to raise the money and pay off these liens and Mackie and he will wait for his labor and costs of his share of the profits until later. What we are after is to get an advance and protect the property.

        Yours truly,        J. W. KERR.

"I have been looking for a second letter from you but none has come yet. KERR."

"NEW HAVEN, Huron Co., Ohio, March 4, 1895.

"*Jno. W. Kerr, Esq., St. Louis, Mo.*

"DEAR SIR: — Yours of twenty-eighth received Saturday evening. Think you must surely have heard

VOL. 146 mo—16

from Mott or seen him ere this reaches you. I have not heard from him, yet there may be letter in office now, have not been up town yet to-day although our mail does not reach here from the south until 5 P. M., after this goes out, but will write you soon as I hear from him, and if do not hear from him to-day will by next mail address him again. The matter shall not drag, even if I have to make a trip to straighten it out; of course want to save unnecessary expense, and there is no reason, that I can imagine, why Mott can not fix matter without putting me to any such expense. There is no use in delaying matters, the facts will be the same in future as they are at present, meet them as well now as any time, is what I wrote Mott.

"Yours, etc.                    GEO. H. SAUER."

"ST. LOUIS, March 14, 1895.

"*Mr. George H. Sauer, New Haven, Huron Co., Ohio.*

"Last week for April term; shall I ask for receiver; any prospect of settlement? Answer. JOHN W. KERR."

"NEW HAVEN, Huron Co., Ohio, March 14, 1895.

"*Jno. W. Kerr, Esq., St. Louis. Mo.*

"DEAR SIR:—Your telegram received this evening; in reply will say, that I deem it unnecessary to ask for receiver, for this matter is bound to be settled, and that just and equitable, and at an early date. I don't hear from Mott, and can not imagine why; will send him letter in morning that will elicit reply. Would go to St. Louis myself if could get away, but my family are in just such condition that can not leave. My wife is liable to be taken sick (confinement) at any hour, and others in family not well, but if this settlement is not effected soon, will as early as possible arrange to get there and see about it. I can not understand why Mott has failed to furnish money. Have no statement, can not imagine from Mackie's estimate any money

borrowed, there should not have been much more neces-
sary, but without statement can not say anything about
it; have written for it and should have it now. The
legislature of Missouri will adjourn this week I think,
and Mr. Mott can probably attend to business then;
think whole trouble arises from dabbling in politics.
"Yours, etc.                    GEO. H. SAUER."

James England testified, on behalf of plaintiff,
that he painted the Flad avenue houses; that there is
due him for that work a balance of $320; he thought
Mackie was a contractor for the erection of these houses,
did not know he was a partner; he obtained judgment
on a mechanics' lien suit for this amount due him.

Plaintiff offered in evidence the written notice of
*lis pendens*, referring to this suit, duly acknowledged
and recorded.

Plaintiff also offered in evidence the deed dated
August 25, 1894, from defendants and their respective
wives, to James M. Carpenter, conveying three of the
four Flad avenue houses for the consideration of $23,-
000.

Plaintiff also offered two statements of account of
M. D. Lewis, in account with Mott and Sauer, dated
August 10, 1894, each showing the items of disburse-
ment of one of the two loans of $4,000, each made by
Lewis to defendants on part of the Flad avenue prop-
erty; also statement of account of James M. Carpen-
ter with defendants, showing the mode of disburse-
ment of the sum of $4,500, loaned by Carpenter to
defendants on the Morgan street property, acquired by
defendants of Carpenter in exchange for three of the
Flad avenue houses; also statement of account of Mis-
sissippi Valley Trust Company of account with Storm
& Farish, showing items of disbursement of loan of
$8,000, made by Storm & Farish to defendants on part
of the Flad avenue property.

John P. Rousch testified, on behalf of defendants: That he is a builder; that about October, 1895, he saw the Flad avenue houses and did considerable work on one of them at request of defendant Mott, in order to put it in tenantable condition; the expense of the work and material furnished by him in repairing this house was $342.78.

William Bruno testified, on behalf of defendants: That he is a builder; that he examined one of the Flad avenue houses at the request of defendant Mott, in the summer of 1893, and found it to be in poor condition, out of repair; he did work there amounting to $4.50.

Defendant Mott testified, in behalf of defendants, in substance: That he and his codefendant, Sauer, owned this property on Flad avenue; that when he had the conversation with plaintiff regarding the property there were four unfinished houses on the land; he said to plaintiff that they, defendants, "had some property they wanted to finish and would like to have him look at it and see what it would cost to finish them. Mr. Mackie went out and made an examination and said he thought he could probably finish them at a cost of a certain amount of money." Defendant Sauer, witness' cotenant, lived in Ohio. "I told Mackie we would take bids, and to say what he could complete the houses for." All defendants cared for was to get their money out of the property. "I told Mackie to make a bid, and I told L. B. Wright to make a bid, and Mackie's bid was $11,753. It was a bid to complete the entire four houses, according to plans and specifications." Wright's bid was larger than Mackie's. "When Sauer was here he suggested that we take bids, that if Mackie was the lowest bidder to give the bid to Mackie; I told him I had known Mackie and always,

Mackie v. Mott.

so far, found him perfectly straight, and up to that time had unbounded confidence in him. Mackie was the lowest bidder and I told him to go ahead and do the work, and we will pay for the work, up to that amount. Mackie started in to do the work. The first thing we did was to negotiate a loan." The real estate firm of F. W. Mott & Co. tried to get a loan, and Mackie then suggested that defendants negotiate a loan through his friend J. H. Farish, who in turn obtained the money for the loan from the Mississippi Valley Trust Co. Of the money borrowed of Farish $2,-811.83 was used in paying off part of an existing deed of trust on the property held by O'Reilly, and $3,-356.53 was paid to Mackie on account of work on the houses. Later on defendants borrowed $8,000 of M. D. Lewis, of this the sum of $2,861 was paid O'Reilly, balance due on his deed of trust, $500 for street improvements, and the balance to Mackie for work on the houses. About this time witness went with Mackie to see W. J. Templeman who testified for plaintiff at the trial of this cause, and who witness understood wished to buy one of the houses. Witness said to him "Mr. Templeman, this is my friend, Mr. Mackie; he is interested in building those houses for Sauer and myself." Defendants were anxious to sell this property and Mackie informed witness that a friend of his named Holbrook could trade the property for defendants. Defendants valued the three houses traded to Carpenter, at $20,000 or $21,000, and he and Mackie agreed that Carpenter's Morgan street property was not worth $11,000. It was a very dilapidated building fronting on an undesirable street, and continually vacant. In making the exchange of property with Carpenter he agreed to loan defendents $4,500 on the Morgan street property, which they were taking in exchange for three of their Flad avenue houses encum-

bered for $12,000. The consideration in the deed, from defendant to Carpenter, conveying the Flad avenue houses, was stated at $23,000, under an understanding with Carpenter, it being $3,000 more than the value of the Flad avenue property. Witness tried for eighteen months to sell the Morgan street property, holding it at $9,000, but could only get $8,000, and sold it for that price about October, 1894, the purchaser paying $150 cash, assuming the $4,500 incumbrance, and paying the balance of the purchase money in monthly installments of $50 and interest. This was the best offer witness could get for the property. Witness paid out on account of this property $270 interest and also the taxes. Of the $4,500 borrowed on the Morgan street property, $500 was paid to Holbrook for his services in making the trade, and the balance was paid to Mackie for work on the houses.

In addition to the amount borrowed on the Flad avenue property and expended in its improvement, witness paid M. B. O'Reilly $405.10, being commissions and costs of advertisement, due him in order to redeem the property from foreclosure sale, made by O'Reilly under a prior deed of trust, he agreeing to permit defendants to retain the property upon payment of these expenses. Witness also paid $80 for insurance on the Flad avenue property; paid W. J. Templeman $41 for water pipe on Flad avenue; paid insurance on Morgan street house, $10. Witness denies the statements made by plaintiff in his testimony, that witness asked Mackie to bid on the completion of the houses merely to show such bid to Wright; witness says he told Mackie he wanted Wright also to bid.

Witness testifies that J. H. England, who painted the houses and testified for plaintiff, was not paid; he sued Mackie and got judgment, with a lien on the property, but the judgment being invalid as to the

property, witness declined to pay it. Witness states that the receipt signed "J. H. Mackie, contractor," and shown plaintiff when on the witness stand, and other receipts put in evidence by defendants, were received by witness from the Mississippi Valley Trust Company just before the trial; he had never seen them before; the word "contractor" was on the receipt when witness received it from the trust company.

Defendant offered in evidence the following papers all of which were identified by Mackie when on the stand:   The bid of Mackie in words as follows:

"St. Louis, Mo., February 8, 1894.
"*F. W. Mott, Esq., St. Louis.*

"Dear Sir:—I propose to furnish all labor and material to finish and complete the four unfinished houses on Flad and Cabonisa avenues for the sum of eleven thousand seven hundred and fifty-three dollars.

"Respectfully yours,
"J. H. Mackie,
"901 Wainwright Building."

Also receipt of April 28, 1894:

"St. Louis, Mo., April 28, 1894.
"Received of Storm & Farish two hundred dollars paid out on labor to carpenters and stone masons on Flad avenue houses, lots 27 and 28, city block 2117.                 J. H. Mackie, Contractor."

Also receipt dated May 12, 1894:

"St. Louis, Mo., May 12, 1894.
"Received of Storm & Farish two hundred dollars of labor of carpenters on Flad avenue residences, lots 27 and 28, city block 2117.

"J. H. Mackie, Contractor."

Also receipt dated June 22, 1894:

"St. Louis, Mo., June 22, 1894.
"Received of F. W. Mott eighteen hundred and seventy-five dollars, on account of contract for house

No. —— on. Flad avenue, in block 2117.    $1,875.  Re-
ceived payment.                          J. H. MACKIE."

Also order on Farish:

"MR. FARISH:—Please pay to Dooly & Lancaster,
on account of plumbing on two houses on Flad avenue,
for Mott and Sauer, $300.          J. H. MACKIE."

Also order on Farish:

"ST. LOUIS, Mo., May 2, 1894.

"MR. J. H. FARISH:—Please give Mr. Fletcher a
check for forty-eight dollars for sand delivered on Flad
avenue on Mr. Mott's houses.

"Respectfully yours,

"J. H. MACKIE."

Indorsed across the face:    "Paid 5-2-94, as per
receipt."

Also the following bond:

"BOND AGAINST MECHANIC'S LIENS.

"Know all men by these presents: That George H.
Sauer and F. W. Mott, of the city of St. Louis,
State of Missouri as principal, and J. H. Mackie and
E. C. Robinson of St. Louis, Missouri, as securities,
are jointly and severally held and firmly bound unto
DeLacy Chandler of St. Louis, Missouri, in the sum
of thirty-seven hundred and fifty dollars, lawful money
of the United States of America, well and truly to be
paid to the said DeLacy Chandler, for which payment
well and truly to be made, we bind ourselves, and each
of us by himself, our and each of our heirs, executors
and administrators, firmly by these presents.    Sealed
with our seals and signed with our hands, this four-
teenth day of April in the year of our Lord eighteen
hundred and ninety-four.  The conditions of the above
obligations is such, that,

"WHEREAS, the said George H. Sauer and F. W. Mott have, on the date of these presents, borrowed from the said DeLacy Chandler the sum of thirty-seven hundred and fifty dollars to complete a certain residence, situated on lot 27 in city block 2117, according to plans and specifications now in possession of said DeLacy Chandler. Now, if the said George H. Sauer and F. W. Mott shall keep the said DeLacy Chandler harmless and indemnified from and against all and every claim, demand, judgment liens, and mechanics' liens, costs and fees of every description incurred in suits or otherwise that may be had against him and against the building to be erected on said lot and shall repay the said DeLacy Chandler all sums of money which he may pay to other persons on account of work and labor done or materials furnished on or for said building, and if the said George H. Sauer and F. W. Mott shall pay to the said DeLacy Chandler all damages he may sustain, and all forfeitures to which he may be entitled by reason of the non-performance or mal-performance on the part of said George H. Sauer and F. W. Mott of any of the covenants, conditions, stipulations and agreements contained in said plans and specifications, then this obligation shall be void; otherwise the same shall remain in full force and virtue.

"Witness our hands and seals.

"[SEAL]     GEORGE H. SAUER.
"[SEAL]     F. W. MOTT.
"[SEAL]     J. H. MACKIE.
"[SEAL]     E. C. ROBINSON."

In rebuttal plaintiff testified, that he made two bids for this work and approximated it at $12,000; the first bid was in writing; it was just an approximation on a slip of paper about what it would cost. This was in February, 1894.

The court made a finding of facts and rendered judgment as follows:

"And further the court finds from the evidence that, on or about the 25th day of February, A. D. 1894, the plaintiff was by his trade or profession a contractor and builder; and that the defendants, Frederick W. Mott and George H. Sauer, were the owners of and in possession of two hundred feet of ground on the northwest corner of Spring and Flad avenues in the city of St. Louis, Missouri, to wit: Lots Nos. 25, 26, 27 and 28 in block 13, Tyler Place, in city block 2117, each having a front on Flad avenue of 50 feet by 123 feet and 4 3-4 inches to a 15-foot alley; that sometime prior thereto there had been commenced the building of a brick house on each of said lots.

"The court further finds from evidence that on or about said date, plaintiff and defendants entered into an agreement in reference to the same, whereby it was contracted and agreed that plaintiff should go on and finish the houses, and improve the premises, each house to be a two story brick, containing ten rooms, cellar and finished attic, slate roof with all modern improvements and conveniences, in and about the same, and the grounds and property to be put into complete order for market. That plaintiff was to give his time, superintendence, and personal attention to the work, to manage and direct the buildings and improvements, and the work to be done. That the defendants, Frederick W. Mott and George H. Sauer, agreed to furnish the money necessary for the completion of the buildings and improvements. The court further finds from the evidence that the agreement was that when finished the property should be sold, and after deducting or refunding the moneys advanced and paying the incumbrances

on the lots, the balance arising from the sale of the same was to be equally divided between the three parties, James H. Mackie, Frederick W. Mott and George H. Sauer. The court further finds from the evidence that on March 1, 1894, plaintiff entered upon the work and completed and finished the houses and improvements under said agreement.

"The court further finds from the evidence that it was the intention of the parties that the said contract entered into was to and did constitute a copartnership between the parties to this suit.

| | | |
|---|---|---|
| That the defendants Mott and Sauer, borrowed on said property and the proceeds thereof the sum of. ......... ............... ..... | | $20,500 00 |
| That the said Mott and Sauer, defendants, paid out or advanced the sum of........... | | 22,008 45 |
| Leaving surplus advanced above loan. ...... | | $1,508 45 |
| That they, defendants, having refused to advance any other or further sums, plaintiff advanced the sum, to save the property, of. | | 976 00 |
| That the remaining assets of the copartnership is secured notes, on certain Morgan street property.......... ............... | $3,500 00 | |
| And the Flad avenue lot No. 25, the equity therein of.............................. | 3,000 00 | |
| Total assets ............. ................ | $6,500 00 | |
| Deducting advances by defendants....... ... | 1,508 45 | |
| Balance of assets one third due plaintiff...... | $4,991 55 | $1,663 85 |
| Add amount advanced by plaintiff..... ..... | | 976 65 |
| Amount due plaintiff .. ............... | | $2,640 50 |

"The court also finds from the evidence that the following notices of mechanics' liens arising from the buildings and improvements of said houses and premises were filed against plaintiff and defendants and the property, as mechanics' liens, and that the liens applied

to lot No. 25 aforesaid, and judgments were rendered thereon, to wit:

No. 163—Central Mantel Company v. plaintiff and defendants, lien for..... ........... .. . .. ........ .... ..... . ....... $183 00

Being No. 6841, Trans. filed February 9, 1895, in Circuit Court.

No. 164—S. S. Dooly and James Lancaster v. Mott, Sauer and plaintiff for ... ......... .... ....................... $701 00

Being No. 6840, Trans. filed February 9, 1895, in Circuit Court.

Claim and judgment of England v. same for (before Justice Kline)... .... ........ ... ... .. ............. .... $320 00

Being No. 6852, Trans. filed February 19, 1895, in Circuit Court.

"That defendants in accounting have received credit for the same, it appearing from the evidence that they had paid the same and had the same assigned to them or to Frederick W. Mott, except the claim of England for $320 interest and costs.

"The court further finds from the evidence that there is still remaining on the said lot No. 25, a trust deed dated June 5, 1894, to secure notes—one for $4,000 at 3 years, and semi-annual interest notes at 6 per cent.

"The court further finds from the evidence that the plaintiff filed in the recorder's office in the city of St. Louis, on the eleventh day of May, 1895, a notice *lis pendens* of his claim for an equitable lien on said lot No. 25, and the same was regular and as required by law.

"The court further finds from the evidence that the said defendants, Frederick W. Mott and George H. Sauer, failed and refused to carry out the copartnership agreement, and wholly refused to account with the said plaintiff, but wrongfully and willfully converted all of the assets of said copartnership to their own use, refusing to pay to said plaintiff the said or any amount due him.

That the remaining assets consist of secured notes, sale of Morgan street property...... .. ....... ..... . ...... $3,500 00

The remaining Flad avenue lot, equity therein, lot No. 25..... 3,000 00

Total. ........ .. ... ...... ... .. .. $6,500 00

"Now, therefore, it is ordered, adjudged and decreed that said copartnership be and is hereby dis-

solved; that said defendants enter satisfaction of record for said claim and judgment of Central Mantel Co. for $183, interest and costs, and S. S. Dooly and James Lancaster, judgment for $701, and interest and costs, and in default thereof that this decree shall stand in satisfaction of the same, and that the plaintiff have and recover of and from the said defendants, Frederick W. Mott and George H. Sauer, and each of them the said sum of $2,640.50 and interest and costs in this behalf expended.

"It is further ordered that the said sums from and after May 11, 1895, be and are hereby decreed to be a lien on said lot No. 25 in block 13, Tyler place, in city block 2117, in the city of St. Louis, Missouri, and all the improvements thereon and the sums herein found to be due, be levied of the said real estate, and that the same be sold subject to the said trust deed for $4,000 and interest unpaid. And that the proceeds be applied first to the payment of costs herein; next to payment of claim and judgment of said England for $320, interest and costs, and the balance, if any, applied in payment of the judgment herein rendered.

"And it is further adjudged that if the same be not sufficient to satisfy said debt and cost and said sum ordered to be paid; that the residue of said debt be levied of the goods and chattels, lands and tenements of said defendants, Frederick W. Mott and George H. Sauer."

After unsuccessful motion for a new trial, defendants appeal.

The first assignment of error is that the court committed error in ruling that there was a partnership between the parties. It is insisted by defendants that the relation of a partnership does not exist between persons associated in a common undertaking unless each

one has the right to manage the whole business, and to dispose of the entire property involved in the enterprise for its purposes, in the same manner and with the same power as all can when acting together. Upon the other hand it is urged by plaintiff, that if in fact the parties intended to become partners in improving and marketing the Flad avenue property, he can in equity enforce the rights of a partner against defendants.

It is not we think absolutely necessary in order to constitute a partnership in the net proceeds arising from the management and improvement of real property that each member of the partnership should have the power of disposal of the property, but the mere fact of a "participation in the profits and loss does not necessarily constitute a partnership between the parties so participating. . . . It is a question of intention on the part of the alleged partners and is one which the triers of the fact will have to determine upon all the circumstances proved." *McDonald v. Matney*, 82 Mo. 365. Each case must be determined by its own peculiar facts. It will hardly be contended that two or more persons owning the fee in property, as in the case at bar, may not enter into a partnership with another with respect to improving the property, and the profits arising therefrom, upon its sale. To so hold would be to deprive the parties of the right to contract, and all partnerships are formed by contract, expressed or implied.

The question then is, do the facts and circumstances disclosed by the record show that plaintiff and defendants were partners, as alleged by plaintiff? In Parsons on Partnership, page 58, it is said: "It should be added, that whether two or more persons are partners *as to each other*, must generally, and perhaps always, be determined by the intention of the parties, as the same is expressed in the words of their contract, or may be gathered *from the acts and from all the* cir-

cumstances which are available for the interpretation or construction of the contract.''

Plaintiff testified that Mott had four houses on his property which one Rowe had started to build for him and had abandoned, and that Mott proposed to give him one third of the profits to be derived from these houses if plaintiff would give his time and attention to their completion, defendants furnishing the money required to complete the same, and when the houses were completed they were to be sold and the profits after reimbursing Mott and Sauer were to be divided equally between them.    That under this arrangement he went to work on and furnished between $1,500 and $1,600 on the houses and completed them according to the terms of the contract, on his part.    That the first time he knew that Mott claimed witness was doing the work on the houses as a contractor was when he gave a man an order on Mott for some money, and Mott told the man that he had overpaid Mackie on the contract.

Mott testified that Mackie did the work under contract.

The formation of a copartnership is one of intention by all the parties thereto which must be arrived at from the contract itself and surrounding circumstances, and there is nothing in this record showing that defendants ever intended to enter into a copartnership with plaintiff, in regard to the completion of the houses and the profits to be derived therefrom.    It is true that W. J. Templeman testified that on one occasion Mott introduced Mackie saying, ''He is interested with us in the construction of those houses,'' but all these facts are not inconsistent with the position of Mackie as contractor.    Moreover, Mackie on the eighth day of February, 1894, proposed to Mott in writing to furnish all labor and material to finish and complete the four unfinished houses for the sum of $11,753; beside, he

thereafter gave receipts as *contractor*, for money received from Storm & Farish, paid out to carpenters and stone masons on the building. He also on the twenty-second day of June, 1894, receipted to Mott for $1,875 on account of contract for house on Flad avenue, and gave two orders on Mott in favor of different persons for work done and material furnished on said buildings. The receipt to Mott for the money, and the two orders, were not however signed by him as contractor. It is true that plaintiff undertook to explain his bid of $11,753 for the completion of the houses, and to show that it was not inconsistent with the idea of a partnership between himself and defendants, but to say the least of it, his explanation was very unsatisfactory. The facts mentioned and many others connected with the transaction not necessary to mention force us irresistibly to the conclusion that there was no partnership existing between plaintiff and defendant as alleged in the petition; and with due deference to the conclusion reached by the court below, we so find.

The solution of this question necessarily disposes of all others raised upon this appeal.

The judgment is reversed. GANTT, P. J., and SHERWOOD, J., concur.