BAUM, Respondent, v. STEPHENSON, Appellant.

**St. Louis Court of Appeals, October 20, 1908.**

1. **PRACTICE: Right of Trial by Jury: Partnership.** Where plaintiff in his petition alleged that he and the defendant had agreed to purchase and did purchase a certain amount of capital stock in a corporation and divided it equally between them, each holding his part of the stock, and that afterwards the defendant sold it all for the benefit of the plaintiff and defendant and that the defendant had received a secret and additional consideration which he did not share with the plaintiff, and praying for a judgment for one half the proceeds of such additional consideration, the petition did not state facts showing a partnership between the parties and, the action being for a straight money judgment, the defendant was entitled to a jury trial on the issues of fact.

2. ——: ——: ——. And, in such action, where it was alleged in another count of the petition that in the transaction of selling the stock owned by the plaintiff and defendant, the defendant by fraudulent representations induced the plaintiff to part with $500 for which sum he asked judgment, the issues thus raised were cognizable at law entitling the defendant to trial by jury on that count.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. K. Kinealy*, Judge.

REVERSED AND REMANDED.

*G. B. Webster* and *James D. Simms* for appellant.

(1) The denial of the right of trial by jury was error. This proposition is not open to dispute, if the action was properly one of law. Mo. Const., art. II, sec. 28; Rogan v. McCoy, 29 Mo. 356; Donovan v. Barnett, 27 Mo. App. 460; Hardware Co. v. Wolter, 91 Mo. 484; New Harmony Lodge v. Railroad, 100 Mo. App. 407. (2) Under the facts pleaded and proven there was never any partnership between the parties. Musser v. Brink, 68 Mo. 242; Donnell v. Harshe, 67 Mo. 170. (3) There is no joint agency, for the record shows that each

considered the consent of the other necessary to a sale, and this is a good test. Jarnee v. Simonson, 58 N. J. Eq. 282; Harvey v. Childs, 28 Ohio St. 319; Ashby v. Shaw, 82 Mo. 76; Hallet v. Desban, 14 La. An. 535; Lee v. Cravens, 9 Colo. App. 272; Grigsby v. Day, 95 S. D. 585. When the question as to the existence of a partnership arises between the alleged partners, it must be proven by an express contract. As between them it never exists by operation of law. Ingals v. Ferguson, 59 Mo. App. 306; Lucas v. Cole, 57 Mo. 143; Freeman v. Bloomfield, 43 Mo. 391; Einstein v. Gourdin, 4 Woods. 415; Priest v. Chouteau, 85 Mo. 398. (4) It was formerly the rule that any sharing of the profits of a venture constituted partnership. It was first announced in Grace's case, 2 W. Bl. 998 (1775), and continued in effect until 1860 when it was overturned in the leading case of Cox v. Hickman, 8 H. L. Cas. 268. The latter case has been uniformly followed in the United States. Chung Kee v. Davidson, 102 Cal. 188; Purvis v. Butler, 87 Mich. 248; Emmons v. Bank, 97 Mass. 230; Brundred v. Muzy, 25 N. J. L. 268; McDonald v. Matney, 82 Mo. 358; Taylor v. Herring, 10 Bosw. 447; Webb v. Hicks, 123 N. Car. 244; Righter v. Farrel, 134 Pa. St. 482; Diles v. Bridges, 23 W. Va. 20; Dunnel v. Stone, 30 Me. 384. As between the partners, the question is one of intention on their part. Hazzard v. Hazzard, 1 Story 371; Earle v. Pub. Co. 95 Fed. 548; Niehoff v. Dudley, 40 Ill. 406; Ruddick v. Otis, 33 Iowa 402; Macy v. Combs, 15 Ind. 469; Runnels v. Maffat, 73 Mich. 188; Pillsbury v. Pillsbury, 20 N. H. 90; Sheridan v. Nedara, 10 N. J. Eq. 469; Mershon v. Hohensack, 22 N. J. L. 372; Osbrey v. Reimer, 51 N. Y. 630; Smith v. Lennon, 14 N. Y. S. 260; Krall v. Forney, 182 Pa. St. 6. Of course it is the legal intent which is the test rather than what they may have said, and that does not militate against the rule, although in a doubtful case the expressed intent may be sufficient to turn the scales one way or the other. 22

Am. and Eng. Enc. L. (2 Ed.), p. 27. Even common ownership of property does not create any partnership of itself, although it be used for the purpose of making gains. Magruder v. Bowie, 2 Cranch 577; Holton v. Guinn, 76 Fed. 96; Donnan v. Gross, 3 Ill. App. 409; Chapel v. Washburn, 11 Ind. 393; Sears v. Munson, 23 Iowa 380; Banchor v. Culley, 38 Maine 553.

*Lee Sale* for respondent.

(1)  Under the facts as found by the court, the plaintiff was entitled to a judgment for the five hundred dollars paid by him to defendant with interest from November 27, 1899, because said payment was a gift which, although made voluntarily, was made under circumstances which entitled plaintiff to rescind the gift. Neilson v. Bowman, 29 Grat. 732; Story's Equity Jurisprudence, sec. 315; Bates on Partnership, secs. 303, 309, 961.  (2)  Under the facts as testified to by both plaintiff and defendant, and as found by the court, there was clearly a partnership which had for its object the building of an electric street railroad. This was a joint business enterprise undertaken by plaintiff and defendant under an agreement to share the expenses and profits thereof, and was therefore a partnership. Meehan v. Valentine, 145 U. S. 611; Hughes v. Ewing, 162 Mo. 261.  (3)  Defendant was not entitled to a jury trial, because the action was based upon equitable rights, towit, the right to have defendant declared a constructive trustee for plaintiff as to one-half of the bonds clandestinely received by defendant as his individual property, and the right to rescind for fraud a settlement made between partners. Weil v. Kume, 49 Mo. 158; Gay v. Ihm, 69 Mo. 584; Hunter v. Whitehead, 42 Mo. 524; Lime & Cement Co. v. Bank, 158 Mo. 272; Conran v. Seller, 28 Mo. 320; Ely v. Coontz, 167 Mo. 371; Ellis v. Kreutzinger, 31 Mo. 432.

BLAND, P. J.—Omitting captions and signatures, the pleadings are as follows:

### PETITION.

"Plaintiff states that prior to the month of November, 1890, plaintiff and defendant had been associated together in business for several years; that between the years 1884 and 1889 he and the said defendant had been engaged as partners in the practice of law at the city of Shelbyville, in the State of Illinois.

"That in or about the month of November, 1897, plaintiff and defendant agreed to form a partnership for the purpose of obtaining or controlling a right of way between the cities of East St. Louis and Belleville, in the State of Illinois, over the turnpike between said cities, with a view to the construction and operation of an electric railway between the said cities; that in pursuance of said agreement, and as part thereof, plaintiff and defendant agreed to attempt to obtain a controlling interest in the St. Clair County Turnpike Company, a corporation organized under the laws of the State of Illinois, owning and operating a turnpike road between said cities of East St. Louis and Belleville; that it was further agreed between said parties that all stock so to be purchased should be divided equally between them, each party paying his one-half of the cost thereof, and that all stock so to be purchased should be held and managed in common and by the parties hereto as partners; that neither of said parties should, without the consent of the other, sell any portion of the stock so purchased.

"Plaintiff further states that in pursuance of said agreement, plaintiff and defendant did in November, 1890, purchase three hunlred and fifty-seven (357) shares of the capital stock of the said St. Clair County Turnpike Company, each of said parties paying one-half of the purchase price thereof.

"Plaintiff states that thereafter in pursuance of said partnership agreement shares of the capital stock of said St. Clair County Turnpike Company were purchased from time to time by said plaintiff and defendant, severally, and that the shares of stock so purchased were thereupon divided equally between plaintiff and defendant, and paid for by the plaintiff and defendant, share and share alike; that the amount of stock so purchased and owned by plaintiff and defendant in the year 1897 aggregated the sum of six hundred and twenty-five (625) shares; that the entire capital stock of said St. Clair Turnpike Company aggregated twelve hundred and seventy (1270) shares, of which two hundred and seventy (270) shares were at all times herein mentioned retained in the treasury thereof as treasury stock of said company.

"That for some years prior to the year 1897, in pursuance of said agreement, defendant had occupied the position of president of the said St. Clair County Turnpike Company, and plaintiff during the same time had occupied the position of secretary and treasurer of said company, both plaintiff and defendant receiving the same salary as such officers.

"That during the entire period prior to 1897, during which plaintiff and defendant were connected with the said Turnpike Company, plaintiff had active control and management of said company, and devoted all the necessary attention to the business of said company, defendant being during all said period in poor health, and unable to give his time and attention to the business of the said company.

"Plaintiff further states that for several years prior to the year 1897, he and the defendant, in conjunction with one D. P. Alexander, had made efforts to obtain franchises that would enable them to build an electric railway over the said turnpike road, and during the said years had respectively obtained various franchises with

the view and purpose of building said electric railway from East St. Louis to Belleville, and that each of the said parties had during said period made efforts to interest capitalists in the building of said electric railway, but that prior to the month of November, 1897, all of the efforts of said parties had been of no avail.

"That in the month of November, 1897, the firm of Townsend, Reed & Company, being desirous of constructing and operating an electric railway between the said cities of East St. Louis and Belleville over the turnpike then owned by the said St. Clair County Turnpike Company, entered into negotiations with the defendant for the purchase of the six hundred and twenty-five (625) shares of the capital stock of the St. Clair County Turnpike Company, then owned and held by plaintiff and defendant as partners in the manner and upon the terms hereinbefore set out; that all of said negotiations were had by the said firm of Townsend, Reed & Company with defendant, who was acting on behalf of himself and plaintiff in the city of St. Louis, while plaintiff was residing in the city of Shelbyville, Illinois, and attending to the business of said St. Clair County Turnpike Company.

"Plaintiff further states that in pursuance of said negotiations, plaintiff and defendant did, on November 12th, 1897, enter into a contract with said firm of Townsend, Reed & Company, by the terms of which plaintiff and defendant agreed to sell the said six hundred and twenty-five (625) shares of stock so held by them in the St. Clair County Turnpike Company for the sum of forty thousand dollars ($40,000), payable one thousand dollars ($1,000) in cash, and the balance of thirty-nine thousand dollars ($39,000) in one year from the date of the making of said contract, and did further agree to obtain for the said firm of Townsend, Reed & Company the right to construct and operate a double track railroad on the property and right of way of the St. Clair County

Turnpike Company from East St. Louis, Illinois, to Belleville, Illinois. That thereupon, and in pursuance of said contract, the sum of one thousand dollars ($1,000) was paid by the said Townsend, Reed & Company to plaintiff and defendant, each of whom received one-half of the amount so paid, to-wit, the sum of five hundred dollars ($500).

"Plaintiff further states that all of the negotiations leading up to the making of the said contract with Townsend, Reed & Company were conducted by the defendant Stephenson, acting for himself and plaintiff, and that during the whole of said negotiations the defendant acted as the representative and agent of plaintiff, and of the joint interests held by plaintiff and defendant in the said Turnpike Company as hereinbefore set out.

"Plaintiff further states that at the time of entering into said contract, and as part of the consideration moving from said firm of Townsend, Reed & Company to plaintiff and defendant for the making of said contract, the said firm of Townsend, Reed & Company had orally agreed with the defendant that they would deliver to him individually as an additional consideration five thousand dollars ($5,000) of first mortgage bonds in a railroad company thereafter to be organized under the laws of the state of Illinois for the purpose of owning and operating a double-track railroad between the cities of East St. Louis and Belleville.

"Plaintiff states that at the time of the making of the contract aforesaid, and during all of the negotiations leading up to the execution of the said contract, defendant concealed from plaintiff the fact that he was to receive the said additional consideration, and for the purpose of concealing said fact, did enter into a separate agreement in writing with the said firm of Townsend, Reed & Company for the delivery to the defendant in-

dividually of the said five thousand dollars ($5,000) of bonds.

"Plaintiff further states that the said agreement so made by defendant was a secret agreement entered into by defendant in fraud of the rights of plaintiff; that plaintiff at the time of the making of the contract was ignorant of the said secret agreement between defendant and said firm of Townsend, Reed & Company, and did not learn of the making of same until some time during the year 1900.

"Plaintiff further states that after the making of the agreement hereinbefore recited, said firm of Townsend, Reed & Company proceeded to organize a corporation for the purpose of building an electric railway between East St. Louis and Belleville, and did in pursuance of the secret agreement hereinbefore mentioned between them and the defendant deliver to defendant five thousand dollars ($5,000) of first mortgage bonds issued by said corporation.

"Plaintiff further states that said five thousand dollars ($5,000) of first mortgage bonds so delivered to defendant were sold by the defendant some time during the year 1899, and exact date being unknown to plaintiff; that defendant received therefor the sum of twenty-five hundred dollars ($2,500), no part of which has ever been paid to plaintiff.

"Plaintiff states that by reason of the premises, there is due to him from defendant the sum of twelve hundred and fifty dollars ($1,250), together with interest thereon from date when the said sum of twenty-five hundred dollars ($2,500) was received by the defendant.

"Plaintiff further states that on, to-wit, the seventh day of November, 1898, the said firm of Townsend, Reed & Company finding that they would be unable to carry out their contract with plaintiff and defendant to pay them the sum of thirty-nine thousand dollars ($39,000)

on November 12, 1898, as hereinbefore set out, did enter into a new agreement with plaintiff and defendant, in cancellation of the agreement theretofore entered into by them, dated November 12, 1897; that in and by said new agreement, it was provided that the said firm of Townsend, Reed & Company should pay to plaintiff and defendant on or before twelve (12) months from date, the sum of thirty-five thousand dollars ($35,000).

"Plaintiff states that after the making of said new agreement, the defendant represented to plaintiff that in order to obtain the said new agreement, he, and defendant, had been compelled to surrender to Townsend, Reed & Company all bonus that he had received from said firm on account of moneys loaned by defendant to assist said firm of Townsend, Reed & Company in the building of an electric railway, and that he, the defendant, had received nothing whatever from said firm of Townsend, Reed & Company in return for the surrender of said bonus. Plaintiff further states that thereupon, and by reason of the representations so made by defendant to plaintiff, plaintiff was induced to agree, and did then and there agree, to give to defendant the sum of five hundred dollars ($500) out of the seventeen thousand five hundred dollars ($17,500) thereafter to be received by plaintiff under the new contract of November 7, 1898, hereinabove referred to.

"Plaintiff further states that on said seventh day of November, 1898, and at the time when he agreed to give to defendant the said sum of five hundred dollars ($500), as aforesaid, the defendant had in his possession the five thousand dollars ($5,000) of first mortgage bonds hereinbefore referred to; that plaintiff at the time he agreed to give defendant the said sum of five hundred dollars ($500) was ignorant of the fact that defendant had received the said mortgage bonds, or that he then had the same in his possession, and that plaintiff did not learn until a long time thereafter that defendant had re-

ceived anything from the said firm of Townsend, Reed & Company other than what plaintiff himself had received, and that he entered into the said agreement with defendant in utter ignorance of the fact that defendant had theretofore received any consideration from the firm of Townsend, Reed & Company in addition to what plaintiff had received.

"Plaintiff further states that thereafter, to-wit, on November 28, 1899, he received from the firm of Townsend, Reed & Company, the sum of seventeen thousand five hundred dollars ($17,500) as provided in said contract November 7, 1898, and that he paid to defendant out of said amount the sum of five hundred dollars ($500) as theretofore agreed; that the payment of said sum of five hundred dollars ($500) by plaintiff to defendant was paid as a gratuity, wholly in consideration of the representations theretofore made by defendant to plaintiff, and in ignorance of the fact that defendant had received and then had in his possession the five thousand dollars ($5,000) of mortgage bonds referred to; that the defendant at the time he induced plaintiff to agree to give him said five hundred dollars ($500) and for the purpose of inducing plaintiff to agree to give the said five hundred dollars ($500) as a gratuity, concealed from the plaintiff the fact that he had received and then had in his possession the said five thousand dollars ($5,000) of mortgage bonds.

"Plaintiff further states that the conduct of the defendant in inducing plaintiff to agree to give him the said sum of five hundred dollars ($500) and in concealing from plaintiff the fact that he had received, and then had in his possession, said mortgage bonds, contrary to equity and good conscience, and of the acceptance by defendant from plaintiff of the sum of five hundred dollars ($500) so paid by plaintiff, was, and is, in fraud of the rights of plaintiff.

"Plaintiff avers that by reason of the premises there

is due to plaintiff from defendant the further sum of five hundred dollars ($500), together with interest thereon from the twenty-eighth day of November, 1899.

"Wherefore, the premises considered, plaintiff prays that defendant may be adjudged to pay to plaintiff the said sums of twelve hundred and fifty dollars ($1,250) and of five hundred dollars ($500), together with interest thereon, and costs of suit."

## ANSWER.

"Now comes the defendant in the above entitled cause and for his answer to the plaintiff's petition denies each and every allegation therein.

"And further answering the defendant avers that on or about the seventeenth day of November, 1899, he and the plaintiff had a full and complete accounting and settlement between themselves and struck a balance and that he thereupon paid the amount thereof to the plaintiff and that since said date he has had no dealings or transactions whatever with the plaintiff.

"Wherefore, having fully answered, defendant prays to be dismissed with his costs.

On the next day plaintiff filed his reply in the nature of a general denial.

Defendant's counsel demanded trial by jury. The court ruled that the petition stated an action in equity and denied the request for a jury trial, from which ruling defendant's counsel saved an exception. After hearing the evidence and making a special finding of the facts, the court rendered judgment on the first count of the petition for plaintiff, assessed his damages at $1,565, and found the issues on the second count for defendant. Both parties appealed from this judgment.

The action is for the sole purpose of recovering a money judgment. The allegation that plaintiff and defendant were partners is but the conclusion of the pleader. Whether or not they were partners, is a ques-

tion of law to be determined from the facts alleged in the petition and shown on the trial. We do not think the facts alleged in the petition show that plaintiff and defendant were partners. The gist of the first count is that plaintiff and defendant agreed to purchase, and did purchase, the majority of the capital stock of the turnpike company, a corporation, and divided it equally between themselves, each holding his stock in his individual right; that after procuring a majority of the stock, they caused themselves to be elected chief officers of the corporation, thereafter managing and controlling its property and business; that the ultimate object plaintiff and defendant had in view in acquiring the capital stock of the turnpike company was to interest other capitalists and build an electric railway over the turnpike road from East St. Louis to Belleville, Illinois; that they did not succeed, and defendant, acting for himself and plaintiff, with plaintiff's consent, sold the stock of both to Townsend, Reed & Company, and by a secret and fraudulent agreement with that company secured for himself over and above the money consideration for the stock, $5,000 in bonds, which he afterwards sold for $2,500 in cash; that said secret agreement was in fraud of plaintiff's rights and he is entitled to one-half the amount realized on the bonds. The gist of the second count is that defendant, by false and fraudulent representations, in respect to the second deal concerning the stock, induced plaintiff to part with $500, for which judgment is asked. The answer put these allegations in issue. The issues thus raised were cognizable at law and as only a money judgment is asked, the petition stated a cause of action at law.

The evidence offered by plaintiff shows that he and defendant bought, from time to time, six hundred and thirty shares of the capital stock of the St. Clair County Turnpike Company, a corporation, for the purpose of getting a controlling interest in that corporation, with

the view of promoting the construction of an electric railway over the turnpike road, running from East St. Louis to the city of Belleville, in the State of Illinois; that the stock purchased was at the equal expense of both parties, and each received and had transferred to himself an equal number of the shares so purchased; that no share or shares were held in common as the joint or partnership property of plaintiff and defendant; that they agreed to hold their stock and work together, and plaintiff was elected secretary and treasurer of the turnpike company and defendant president, each receiving the same salary and having the exclusive management and control of the business of the company; that they expended equal amounts in making repairs on the road and acquiring franchises for the contemplated electric railroad and worked together, as they had agreed, to a common end; that they were unsuccessful in their effort to organize a company, or to raise the necessary capital to build an electric railroad, and in November, 1897, sold their stock to Townsend, Reed & Company for $40,000, one thousand dollars in cash, the balance to be paid in twelve months; that defendant, with plaintiff's consent, acting for himself and plaintiff, negotiated the sale of the stock in St. Louis, Mo., in plaintiff's absence; that Townsend, Reed & Company agreed to build the electric railroad from East St. Louis to Belleville, over the turnpike road, but on the same day and about the same time, said company made a supplemental contract with defendant, whereby they agreed to give him $5,000 par value of certain first mortgage bonds to be thereafter issued; that Townsend, Reed & Company were unable to carry out their contract to build the electric railroad or pay the balance of the purchase price for plaintiff's and defendant's turnpike stock; that a new company was formed which took over all the turnpike stock and agreed to pay, and did pay, plaintiff and defendant $35,-000 in full, for the balance due them from Townsend,

Reed & Company; that the $5,000 in bonds were at some-time delivered to defendant, in pursuance of the supplemental contract of November, 1897, and defendant afterwards surrendered these bonds in consideration of $2,500 in cash; that plaintiff ratified the sale of stock made in November, 1897, to Townsend, Reed & Company, by signing the contract. Plaintiff testified that at the time of signing the contract, and for a long time thereafter, he was totally ignorant of the supplemental contract, or that defendant had received the $5,000 in bonds under said contract, and his evidence tends to show the $5,000 in bonds was given as an additional consideration for his and defendant's stock in the Turnpike Company. In regard to the second count, plaintiff's evidence shows Townsend, Reed & Company began the construction of the electric road in 1897, got into financial difficulties, and defendant let them have $13,000 in money, for which they agreed to give him a bonus of $60,000 par value capital stock, and to pay him ten per cent interest on the money advanced; that in order to carry out the agreement of 1898 (stated in the petition) it was necessary that defendant surrender the $60,000 in stock received as a bonus for the advancement made to Townsend, Reed & Company, which he did, receiving nothing therefor; that in consideration of this surrender, plaintiff agreed to take $17,000 and let defendant take $17,500 of the $35,000 agreed to be paid for the balance due them for their turnpike stock, and the money ($35,000) was paid over to defendant, and he in turn paid plaintiff $17,000. Plaintiff transferred twenty-five shares of his turnpike stock to his wife, one to his brother-in-law, and one to another person, for the purpose of qualifying them to be directors in the turnpike company. Defendant's evidence puts a different phase on the transaction with respect to the bonds, and tends to show, as does also the supplemental contract, that when the contract of 1897 was entered into, whereby the turnpike stock of

plaintiff and defendant was transferred to Townsend, Reed & Company, it was agreed that plaintiff and defendant should have an interest in the construction company organized, or to be organized, to build the electric railway, and that plaintiff declined to become interested in that company, and the $5,000 in bonds was given defendant in consideration of his surrendering his right to become a partner or stockholder in said company. In respect to the second count, plaintiff's own evidence clearly shows he was not entitled to recover. A partnership is said to be "a status resulting from contract." Its essential elements are a contract between the partners to share as common owners in the profits of the business. Plaintiff's evidence clearly shows he and defendant held no property as partners, and carried on no business as partners. Their management of the turnpike road was for the benefit of the St. Clair County Turnpike Company, a corporation, and their acts in the management of the road were done as president and secretary of the company, not as partners, and there being other stockholders than plaintiff and defendant in said corporation, whatever profits were made inured to the benefit of all the stockholders, not to the exclusive benefit of plaintiff and defendant, and this is so, notwithstanding the fact they agreed to and did work especially for the benefit of each other. What they did was in the name of the corporation and not in their names, as partners, and if defendant is liable at all it is on the theory that in negotiating the sale of his and plaintiff's stock, he acted as agent of plaintiff and is liable to him as such. But even if it be conceded that plaintiff and defendant were in someways partners, the action is not for an accounting and settlement of such partnership affairs as was conceded by plaintiff's counsel on the oral argument. The action is for the recovery of money only and was triable by jury. [R. S. 1899, sec. 691; Donovan v. Barrett, 27 Mo. App. 460; Whetstone v. Shaw, 70 Mo.

575; Van Raalte v. Epstein, 99 S. W. 1077.] For the reason defendant was erroneously refused a trial by jury, the judgment is reversed and the cause remanded. All concur.