EDWARD B. TEMM v. PEARL K. TEMM, Executrix of the Estate of ROBERT W. TEMM, Deceased, and PEARL K. TEMM, Appellants. —No. 39403.—191 S. W. (2d) 629.

Division One, December 3, 1945.

Rehearing Denied, January 7, 1946.

*Edward W. Tobin* and *Edward A. Haid* for appellants.

*Walter N. Davis, Richard F. Ralph* and *Frank E. Morris* for respondent.

DOUGLAS, J.—Edward Temm brings this action against the widow of his deceased brother Robert, who is also her husband's executrix, to declare a partnership between him and his brother from November 1, 1918, to May 26, 1940, the date of Robert's death.

For a number of years Joseph Byrne, an uncle of Robert and Edward, carried on a fur business in St. Louis in which he employed his nephews. In 1914 Byrne developed tuberculosis and moved to Denver. He continued his business in St. Louis with the help of his nephews. In 1917 Edward was called to the Army. Sometime before ▮▮▮ November 1, 1918 Byrne withdrew from his fur business. He turned over the business, furniture and equipment to Robert and gave him $40,000 in cash for the purpose of enabling Robert and Edward to carry on the business for themselves. Byrne told Robert that the money was to be used in a firm which the boys should create and in which Edward was to have a one-third interest. Robert agreed to this and later told Byrne his directions had been carried out. Edward did not learn of the arrangement between Robert and his uncle until after Robert's death. Robert commenced business as of November 1, 1918 with capital assets amounting to $46,409.22 under the firm name of Robert Temm & Company. After Edward came back

from the Army and returned to the business Robert, in July or August, 1919, gave him a document which reads: "St. Louis, Mo., November 1, 1918. Received of Edward B. Temm $11,000.00; to be used as part of the capital of the partnership of Robert Temm & Company, with the understanding that the profits of Robert Temm & Company are to be divided according to the amount of capital each partner has invested. Robert Temm & Co. Robert Temm, Pres."

Edward believed this interest in the firm was a gift from Robert "offered from the goodness of his heart." The sum of $11,000 was within $22 and some cents of being 23.75% of the capital with which the firm commenced business on November 1, 1918.

For the purpose of procuring credit the firm gave a financial statement to the bank on December 19, 1919 prepared apparently by Edward but signed by Robert which contained the statement "General Partners: Name Robert Temm, Edward Temm."

On November 1, 1920 the firm gave another financial statement signed by Robert which stated: "General Partners: Name Robert W. Temm (76¼%) Edward Temm 23¾%." The same was done in 1921, 2, 3 and 4. In 1925 the form was changed to show Robert W. Temm, "Amount Contributed .7625" and Edward B. Temm, "Amount Contributed .2375." This form was also furnished the bank in 1926, 7, 8, 9, 1930, 1, 2, 3, 4, 5, 6, 7 and 8. All were signed by Robert.

In 1938 a signature card was given the bank containing over the signatures of Robert and Edward stating: "The firm of Robert Temm & Company is composed exclusively of the undersigned. Checks in the withdrawal of funds from our account may be signed by either of us." In 1937 a resolution signed by both Robert and Edward was furnished the bank authorizing both Robert and Edward to borrow in behalf of the partnership. It stated in its preface: "We, the undersigned, do hereby certify that we constitute all the partners of Robert Temm & Co., 116 North Main Street, an unlimited partnership, having its principal offices in the City of St. Louis, State of Missouri . . . "

There appears to have been a distribution of profits in addition to the monthly drawing account or salary each received in only five of the years the partnership existed namely 1922, 3, 5, 7 and 8. These distributions were divided 76¼% to Robert and 23¾% to Edward.

■ The trial court declared Robert and Edward entered into an agreement of partnership and carried on the business as partners commencing as of November 1, 1918 and that Edward's interest in the partnership estate is 23¾% and Robert's 76¼%. We hold the judgment is sustained by sufficient evidence which is direct and positive.

Generally greater proof is required to establish the fact of partnership in an action betwen the parties themselves or their repre-

sentative than in one by a third party. As between the parties direct evidence of an agreement express or implied to form a partnership is ordinarily required.

In this case we have written evidence of the intent to operate as a partnership in the receipt given by Robert to Edward. This is, of course, no formal contract for the creation of a partnership, but is direct evidence of such an intention. While the evidence of the delivery of the receipt to Edward is disputed there was credible evidence that it was delivered and was accepted by Edward. Thus is shown the necessary mutual consent of Edward and Robert to be partners.

The receipt meets another fundamental test for determining whether a partnership exists. It establishes the community of interest between the parties in the business. It also provides for the sharing of profits which is cogent evidence of a partnership particularly in a suit between the parties. There is lacking from the receipt an express agreement to share losses. But such an agreement is not essential. "As between the parties there need be no express agreement that each party shall bear a share of any losses which may occur in the business, since a partnership may be derived from tests other than an agreement to share losses; if such other tests indicate a partnership the partners are to share losses by operation of law as an incident of partnership, since as a legal consequence, one participating in the profits of a partnership is held liable for a share of the losses." 40 Am. Jur. "Partnership", sec. 39. Since partnership rests on the intention of the parties each case must be determined upon its own particular facts. But in Schneider v. Schneider, 347 Mo. 102, 146 S. W. (2d) 584 we found a partnership existed on evidence which appears not to be as direct and positive as we have here and where there was likewise no express agreement to share losses.

The conduct of the parties subsequent to the giving of the receipt, the admissions in the financial and other statements, the division and distribution of profits in accordance with the per cent of interest each party held in the business all tend to establish conclusively to our mind the partnership and the respective interests as set out in the receipt. The burden on plaintiff to prove the existence of a partnership has been met. Such evidence amply confirmed the gift of the interest in the business to Edward which the receipt evidences, and its acceptance by Edward. It shows that Edward took part in the active management of the business and assumed his share of the partnership liability. Under the circumstances this was sufficient consideration on Edward's part to support the partnership agreement.

Appellants question the competency of Byrne to testify under Section 1887, R. S. 1939, Mo. R. S. A. because Robert is dead. Such question was ruled in Signaigo v. Signaigo (Mo.), 205 S. W. 23 and Darnell v. Darnell (Mo.), 174 S. W. (2d) 812 contrary to appellants'

position. The latter case was reported and annotated in 149 A. L. R. 1125 where the rule is announced that "the weight of authority holds that one entering into a contract for the benefit of a third person is not an incompetent witness (at least if he is not a real party in interest in the action) to testify in respect thereto in the beneficiary's action against the estate, personal representatives, heirs or other persons claiming under or through the deceased party to the contract, either on the theory that such person has no self-interest in the event or outcome of the litigation, or on the theory that he is not 'a person from, under, or through whom' the beneficiary (a party to the action) claims his title or interest in the action."

Appellants challenge the jurisdiction of the court to enter a declaratory judgment except where based on a formal written contract of partnership. They contend the broad power granted by Section 1126, R. S. 1939, Mo. R. S. A. of the Declaratory Judgment Act, "to declare . . . status" is limited by subsequent sections to the declaration of a status created by a written instrument only. They claim that Section 1130 which states that the enumeration in the preceding sections "does not limit or restrict the exercise of the general powers conferred in Section 1126" merely enlarges the relief which a court may grant in those instances which are enumerated.

We do not agree with such contention. Borchard [Declaratory Judgments, 2nd Ed., p. 2289] points out that it was not necessary to add specific powers to the broad power contained in Section 1 of the Uniform Act (Sec. 1126) since that section is broad enough to carry the complete power. "The enumeration of content and the procedural implementation of the general power in section 1 was designed to furnish to the courts a guide in the construction and application of the declaratory power." See also: Teal v. Mixon, 233 Ala. 23, 169 So. 477. On the issue of the declaration of rights under an oral contract Borchard says (p. 504): "Section 2 of the Uniform Act confers the power to pass upon the 'construction or validity', inter alia, of a 'written contract or other writings constituting a contract.' From this, the inference may be drawn that only a contract in writing may be construed or interpreted. But such an inference would, it is believed, be erroneous. Section 1 of the Uniform Act, which confers the general power to declare 'rights, status and other legal relation', and section 5 which provides that the enumeration in sections 2, 3 and 4 does not limit or restrict the exercise of the general powers conferred in section 1, would seem to make it clear that oral contracts may be passed upon." See also Wollenberg v. Tonningsen, 8 Cal. App. 2d 722, 48 P. 2d 738; Zimmer v. Gorelnik, 42 Cal. App. 2d 440, 109 P. 2d 34; Miller v. Currie, 208 Wis. 199, 242 N. W. 570; 1 C. J. S. "Actions", p. 1035. On the propriety of a declaratory judgment on disputed fact issues see: State ex rel. Clay County Bank v. Waltner, 346 Mo. 1138, 145

S. W. (2d) 152; Hyde, Declaratory Judgments, Washington Univ. Law Quarterly, June, 1941.

There is no doubt that the declaration of "rights, status, and other legal relations" authorized in Section 1126 is not limited to those arising under formal, legal written instruments only. Therefore, in this case the court properly exercised its jurisdiction under that section as "a partnership is said to be 'a status resulting from contract.'" Baum v. Stephenson, 133 Mo. App. 187, 113 S. W. 225. And see: Schneider v. Schneider, 347 Mo. 102, 146 S. W. (2d) 584; 47 C. J. "Partnership", sec. 2.

In their brief appellants rely on thirteen points for reversal. In view of the conclusions we have reached it is unnecessary to discuss them separately and in detail. On the evidence before us and in deference to the action of the trial judge, the judgment was proper and should be affirmed.

Judgment affirmed. All concur.