J. C. SCHNEIDER v. ELMER SCHNEIDER, SCHNEIDER SALES & SERVICE, INC., a Corporation, and ELMER SCHNEIDER, Executor under the last Will of EMMA SCHNEIDER, Appellants.—146 S. W. (2d) 584.

Division One, January ·4, 1941.

*Noah Weinstein* and *Fred J. Hoffmeister* for appellants.

*Harry Gershenson* for respondent.

HAYS, J.—This is a suit in equity, brought by the present respondent against his brother the appellant Elmer Schneider, his mother Emma Schneider who died before the entering of the interlocutory decree, and the appellant Schneider Sales and Service, Inc., a Missouri corporation. After the death of Emma Schneider the executors under her will were made defendants and later, after the filing of a will contest suit, an administrator *pendente lite* was appointed and made a party. The original bill in equity alleged that Elmer Schneider, Emma Schneider and the plaintiff entered into a partnership in the year 1929 and, as partners, operated a business enterprise known as the Schneider Nash Sales and Service. The principal place of business of the partnership was in St. Louis, Missouri, and it was engaged in the sale and servicing of automobiles, motor boats and gasoline engines and their parts and appliances. The bill further alleged that the plaintiff devoted all of his time to the business of the partnership, but that in the year 1934 the other two partners, to whom we shall refer as the original defendants, wrongfully excluded plaintiff from further participation in the business

and refused to account to him for his share therein; that they squandered and dissipated partnership assets and paid to themselves unreasonably large salaries and commissions; that after the ouster of the plaintiff from participation in the business the two original individual defendants formed a corporation, which is the corporate defendant herein, and transferred to said corporation, which they owned and controlled, the assets of the old partnership. The bill prays for a dissolution of the partnership and an accounting and injunction against further transfer of the assets and for general equitable relief.

The answer denies the existence of a partnership and alleges that on the contrary the business carried on under the name of Schneider Nash Sales and Service was in fact wholly owned and managed by Emma Schneider as a sole trader, plaintiff being one of her employees. The answer also contained a counterclaim. It prayed for a dismissal of plaintiff's bill and for judgment on the counterclaim in the sum of $9000.

The cause was heard by the chancellor on bill, answer and proofs and an interlocutory decree rendered based upon a finding of the existence of a partnership and the wrongful ouster of the plaintiff by the individual defendants, his copartners. There was a finding that the plaintiff owed to the defendants the sum of $100 on their counterclaim. The interlocutory decree appointed a receiver to take charge of the business and property of the corporate defendant, and also a referee or special master for the purpose of taking an accounting between the plaintiff and the defendants, and retained jurisdiction for further proceedings.

The cause thereupon proceeded before the referee who, in due course, reported to the court, recommending that a decree be entered in favor of the plaintiff and against the defendants in the sum of $10,000, that defendants be allowed credit in the sum of $100 on their counterclaim; and that plaintiff have judgment for interest on such net sum of $9900 at six per cent per annum from January 26, 1935, making a total judgment of $12,721.50. The court, overruling exceptions to the special master's report, entered a final decree in accordance therewith, making the judgment in favor of the plaintiff a lien upon all of the assets of the corporate defendant prior and superior to all claims, except certain particular items of corporate liability amounting to $1837.97 particularly scheduled in the referee's report.

The decree further provided for the continuance of the receivership of the corporate defendant; and that, unless the amount of the judgment above set out should be paid within thirty days after its rendition, the receiver should sell all of the property of the defendant corporation, together with its business and goodwill, at public sale, and should pay out of the amount received at such sale the

costs, including the expenses of receivership, special master's fees, and all court costs, and the items aggregating $1837.97 given priority, as aforesaid, and then pay the principal and accrued interest on the judgment to plaintiff, paying over any surplus to the defendants.

The defendants, having unsuccessfully filed motions for a new trial and for the dissolution of the receivership, appealed to this court. Appellants contend, in the first place, that an interlocutory decree ordering a dissolution of the alleged partnership and the taking of an accounting between the partners was improper for the reason that no partnership ever existed. A partnership is a status; that is, it is a factual relationship between two or more persons who are conducting a business enterprise together. The central fact of that relation is community of ownership of the business. Certain legal consequences follow necessarily from the existence of partnership status. Each of the partners becomes the agent of the others and of the partnership in all matters connected with its business. Each partner is entitled to a voice in the management of the business enterprise, and, except in the case of statutory limited partnerships, each becomes liable to the full extent of his property to the creditors of the partnership; each is entitled to a share in the profits, the amount of such share being determined by the agreement between the parties.

The status of partnership is created by a contract between the persons who become partners. But such agreement may be either oral or written, verbally expressed or implied from the acts and conduct of the parties themselves. The primary criterion to be applied in determining the issue of partnership *vel non* is that of the intention of the parties. [Prasse v. Prasse (Mo.), 77 S. W. (2d) 1001; Neville v. D'Oench, 327 Mo. 34, 34 S. W. (2d) 491.] This statement, however, must not be construed as meaning that each of the partners must fully understand all of the legal incidents which follow upon partnership existence. Such a requirement would practically limit partnerships to those created by carefully drawn written articles or to those between attorneys at law. One of the tests applied to determine the intention of the parties in this connection has to do with their sharing of profits. Ordinarily from the fact that profits are shared, an inference of the existence of a partnership may be drawn. [Torbert v. Jeffrey, 161 Mo. 645, 61 S. W. 823.] But this inference is not altogether conclusive, particularly where the parties, although agreeing to divide profits, do not agree to share any possible losses. [Gill v. Ferris, 82 Mo. 156.]

The record evidence in the present case in regard to the formation of the alleged partnership is somewhat conflicting. Respondent testified about a conference held with his brother and mother in the early part of 1929. At such conference it was agreed that the parties would enter into business, but the amount of the investment of each was not specified. The enterprise was to be carried on in a building

owned by the mother. Plaintiff was to run the service department and the other two were to look after sales. The arrangements, if any, in regard to the payment of expenses were far from clear. Respondent says that each was to get 1/3 of the profits out of the business, but that he never actually received any share.

The individual defendants denied that they intended to enter into such partnership or that there was any agreement as to the division of profits. However, in 1930, after a disagreement had arisen between the parties, a written contract was drawn up at plaintiff's request. It seems to have been written by Elmer Schneider but not signed by him. It was signed by Emma Schneider. According to its terms plaintiff was to sell to his brother and mother for the sum of $742, ''All my right, title and interest in and to all of the assets and property owned and belonging to the Schneider Nash Sales and Service, *a copartnership consisting of the said J. C. Schneider, Emma Schneider and Elmer Schneider* . . . the effect of this instrument being to dissolve *said partnership* and continue the said business in the names of the said Emma Schneider and Elmer Schneider, who will assume all outstandings and obligations of the same.'' (Italics ours.) After this document was executed by Emma Schneider, it was referred to the respondent; but, as he was dissatisfied with the amount provided as payment for his interest, he refused to agree thereto. The document of course, not being signed or agreed to by the respondent, never became a contract; but it is of controlling importance as an admission on the part of Elmer Schneider and Emma Schneider of the existence of the partnership. Nor is the explanation offered that it was drawn up by them in an effort to get rid of respondent sufficient to take away the force of the admission. We are constrained therefore to hold that a partneship did exist from the early part of 1929 on.

Appellants point out that respondent's own evidence fails to disclose an agreement that the alleged partners were to share any losses. It is true that a person connected with a business enterprise may have the right to share profits without the obligation to share in losses, and that this may be because he is not a partner but is an employee, agent, or *del credere* factor of the other. [Mulholland v. Rapp, 50 Mo. 42; Donnell v. Harshe, 67 Mo. 170; Mackie v. Mott, 146 Mo. 230, 47 S. W. 897.] On the other hand, where there is an agreement to share profits and no clear understanding that the losses are not to be divided, a partnership may be implied which would carry with it the obligation to participate in the payment of losses. [Lengle v. Smith, 48 Mo. 276.] This seems to be the situation in the instant case.

The necessary question is whether or not the individual defendants repudiated the partnership and ousted respondent from participation therein so as to justify judicial dissolution. The record

shows that the individual defendants refused to permit respondent to have anything to do with the business and physically removed his tools and equipment from the business. While it is hinted that this action was caused by his indolence and inefficiency, there is no evidence tending to show misconduct on his part. Such expulsion of a partner alone warrants judicial dissolution. [20 R. C. L. 956.] In addition it is shown that after expelling respondent from the business his mother and brother organized the corporate defendant, owning and controlling its capital stock and managing its business, and that they transferred to it all of the assets of the partnership. Where all of the assets of a partnership are lawfully transferred to a corporation created by the partners, the partnership becomes *functus officio* and ceases to exist. [Seufert v. Gille, 230 Mo. 453, 131 S. W. 102, 31 L. R. A. (N. S.) 471.] *A fortiori* the same rule is accomplished where a part of the partners, usurping control over the partnership, unlawfully convey away its assets. [Creath v. Nelson Distilling Co., 70 Mo. App. 296.] It is, therefore, plain that a decree of dissolution is warranted and required by the wrongful conduct of the individual appellants.

Appellants next insist that the chancellor improperly appointed a receiver for the corporate defendant and that, in any event, a decree ordering the sale of all corporate assets by such receiver was improper because it would, in effect, dissolve the appellant corporation. We have repeatedly held that a court of equity is without jurisdiction to dissolve a corporation. [State ex rel. Donnell v. Foster, 225 Mo. 171, 125 S. W. 184; Ashton v. Penfield, 233 Mo. 391, 135 S. W. 938; State ex rel. Kansas City Missouri River Navigation Company v. Dew, 312 Mo. 300, 279 S. W. 65; State ex rel. Kopke v. Mulloy, 329 Mo. 1, 43 S. W. (2d) 806.] A corporation exists as such by virtue of a primary franchise granted by the State. Corporate dissolution within the meaning of the above cases means the termination of corporate existence and the ending of such franchise. The premature death of the artificial corporate person can be brought about only by a court of law as distinguished from one of chancery. On the other hand the mere sale of corporate assets, including such intangibles as good will and going-concern values, does not end a corporate existence any more than the stripping away of a natural person's assets through bankruptcy is equivalent to his death. The power to appoint a receiver to take over the business of a corporation is one which should be sparingly exercised. The chancellor should proceed in such a matter with the greatest of caution. But our decisions have clearly recognized that under exceptional circumstances a court of chancery is not only justified in taking over the complete management of a corporation through a receiver, but can cause such receiver to dispose of all corporate assets. [Thompson v. Greeley, 107 Mo. 577, 17 S. W. 962, cited with approval in State ex rel. Kopke v. Mulloy,

110

supra.] We are forced to conclude that the circumstances of the present case justify such a proceeding.

The relationship *inter sese* of the members of a partnership is a fiduciary one. When certain of the partners wrongfully exclude another from its business and take unto themselves the assets of the firm they become, as to the excluded partner, trustees *ex maleficio*. [Filbrun v. Ivers, 92 Mo. 388, 4 S. W. 674.] Therefore, after the expulsion of respondent, Elmer Schneider and his mother held 1/3 of the partnership property in trust for the respondent. They thereafter conveyed this trust property to the corporate defendant. Where a trustee, in breach of trust, transfers trust property to another who either pays no value for the transfer or takes with notice of the breach of trust, the transferee holds the property subject to the trust. He becomes a constructive trustee himself. [Am. Law Institute, Restatement of Trusts, sec. 288.] A corporation, being an artificial person created by operation of law, can act only through its officers, directors and agents. It is bound by knowledge coming to them within the scope of their duties. In the instant case 98 of the 100 shares of capital stock of the defendant corporation were held at the time of its incorporation by Emma Schneider, and one share by Elmer Schneider. The remaining share was held by Elmer Schneider's wife, presumably to comply with the statutory requirement of three incorporators. Emma and Elmer Schneider constituted a majority of the corporate board of directors and were the officers and managing agents of the company. In fact it was simply their *alter ego*. The corporation is therefore bound by their knowledge. It became and was a constructive trustee of the partnership property turned over to it, which apparently constituted the whole of its assets at the time of incorporation. The court below had authority to trace the trust property into the hands of the corporation, to impress it with the nature of a trust, or to declare it subject to a lien in favor of the defrauded partner and to aid him in recovering what belonged to him through its processes of sequestration. If, as a practical matter, this involved a receiver's sale of the entire corporate business, the court was justified in ordering such sale. No error was therefore committed in this respect.

Appellants complain of the findings of the referee, approved by the court, in regard to the amount due to respondent on the accounting. Applying the principles stated in the foregoing portion of this opinion, it is plain that respondent was entitled to receive from the appellants: (1) 1/3 of the net value of the partnership at the time its property was wrongfully transferred to the corporate defendant; and (2) 1/3 of any net profits earned since such transfer. [27 Har. Law Rev. 125.] The evidence introduced before the referee does not disclose directly what the value of respondent's 1/3 share in the partnership was in 1935, the time of the wrongful transfer to the corpora-

tion. The method of accounting adopted by the special master seems to have been the following: He referred to a report filed·by the receiver on June 1, 1938, in the form of a financial statement or balance sheet of the corporation. This report he accepted as reflecting the financial condition of the company in so far as the same was shown by its books. Appellants complain of the use of this report on the ground that it was not introduced in evidence; but on the hearing before the referee it was referred to by both parties and apparently accepted by them as correctly summarizing the corporate books of account. The referee then proceeded to examine the various items shown on the liability side of the balance sheet, and to disallow some of them, thus reducing the noncapital liabilities by a considerable sum. In this manner he arrived at a figure for the present net worth of the corporation and apparently intended to allow respondent 1/3 of such net worth. The amount of recommended judgment in favor of respondent, however, after deducting $100 found due to the appellants on their counterclaim, is not 1/3 of the net worth of the corporation, and we are unable to perceive how the referee or chancellor arrived at the figure of $9900 mentioned in the decree.

· The theory which the referee seems to have adopted is, apparently, that the entire corporate assets at the time of incorporation consisted of the partnership property wrongfully transferred to the corporation in which respondent had a 1/3 interest; that any increase in corporate assets since the time of incorporation would be accounted for by money lent to or credit extended to the company, in which case such increase would be exactly balanced by noncapital liabilities shown on the balance sheet, or would represent profits from the operation of the corporate business in which respondent would be entitled to a 1/3 interest. But in accepting—for want of more accurate evidence—this theory of accounting, it is apparent that the referee improperly disallowed certain items of liability. In the first place he reduced the accounts payable from the figures shown in the balance sheet because there was evidence that after the compilation of the balance sheet certain of these accounts had been paid. Assuming that this was true, however, the payment was necessarily made either from cash shown on the asset side of the balance sheet or from profits arising from the sale of inventoried merchandise, the cost of which appears as an asset in the financial statement. In either event a decrease in outstanding liabilities would have been balanced by a decrease in assets. But the referee based his calculations on the gross amount of assets shown in the balance sheet.

The partnership, and later the corporation, occupied for business purposes a building which was the sole and separate property of Emma Schneider. For the use of this building it agreed to pay her rent and the amount of such rent appears among the liabilities as an account due to her. The referee disallowed this item. In the same

manner he disallowed an item of indebtedness to Elmer Schneider for money advanced by him in the payment of insurance premiums. It is obvious that the business could not be conducted unless a building were rented from someone and unless insurance policies were carried. Reasonable charges therefore for such items are proper liabilities to be considered, and the fact that such items were owed to two of the defendants could not affect the case. It cannot be said that the balance sheet would correctly reflect the original partnership assets plus subsequent corporate profits unless these expenses were taken into account. The referee should, therefore, have determined whether the charges made were reasonable and just and allowed them at a proper figure. Another item disallowed was for advances alleged to have been made to the business by Lillie Schneider, wife of the defendant Elmer Schneider. Here again if money were actually advanced by her and went to increase the corporate assets, the items should be taken into consideration. As to some of the items of indebtedness to her there is some question, but the referee made no finding as to the amount actually furnished by her but disallowed the entire amount. The referee properly disallowed the salary claim of Elmer Schneider. As one of the original wrongdoers and as a partner his rights should be limited to a 1/3 participation in the profits.

We are unable to understand the theory upon which the trial court allowed interest to the respondent from the date of the conversion of partnership assets until the date of the final decree and at the same time allowed him 1/3 of the profits made during the same period. If he is entitled to participation in profits he would not be entitled to interest. If interest is allowed, participation in profits could not be allowed.

The decree grants, to the claim of the respondent to a part in the corporate assets, priority over all claims thereon except certain accounts payable scheduled in the referee's report. As stated, the claims of Lillie Schneider are not included in those given prior standing, but are disallowed altogether. Lillie Schneider was not a party to this proceeding nor was she given formal notice of the receivership and an opportunity to file a claim and be heard thereon. The decree could not thus dispose of her rights without affording her such notice and hearing. Proper procedure in a receivership is to give notice to all creditors, permitting them before a specified day to file claims with the court, and allow a hearing on all such claims.

For the reasons above assigned we hold that the final decree herein is erroneous and cannot be permitted to stand as entered. It is our conclusion that the judgment should be reversed and that the cause be remanded with directions to the court below: (1) to enter judgment for the respondent and against the appellants for the sum of one-third of twenty thousand dollars ($20,000), to-wit, six thousand six hundred and sixty-six dollars and sixty-six cents

($6,666.66)—the first and larger of said sums being the admitted net assets turned over by the co-partnership to the corporation in January, 1935—which judgment shall be a prior and superior lien upon all the property, assets and affairs of said corporation and superior to all debts, obligations, claims or demands of any kind or character, together with interest thereon at the rate of six per centum (6%) per annum from January 26, 1935, the date of incorporation and conversion referred to above; (2) and for further proceedings in respect to the appellants not inconsistent with this opinion.

It is so ordered. All concur.