Garland Eugene ADAMS and Mary Elizabeth Adams, Respondents,

v.

Finley MASON and Minnie J. Mason, Appellants.

No. 52224.

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1967.

Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 11, 1967.

J. William Blackford, Kansas City, for respondents.

Robert E. Coleberd, Hale, Coleberd, Kincaid & Waters, Liberty, Dudley D. Thomas, Jr., Thomas & Thomas, Carrollton, for appellants.

HOUSER, Commissioner.

This is an action to establish an interest in certain farm lands and for an accounting. This is the third appeal in this case. The first was dismissed as premature. Adams v. Adams, Mo.Sup., 294 S.W.2d 18. The second resulted in the reversal of a judgment that plaintiffs are the fee owners of certain real estate and awarding them $16,304.63, and the cause was remanded for further proceedings. Adams v. Mason, Mo.Sup., 358 S.W.2d 7. The judgment from which this third appeal is taken ordered the substitution of Garland Adams, administrator, as party plaintiff in place of Hedge Bland Adams, deceased; decreed that plaintiffs Garland and Mary Adams owned a 187.375-acre tract in fee simple; that Garland Adams had an option to purchase from defendants Finley and Minnie Mason a 27½-acre tract for $58.80 an acre and that if he exercised his option he should file a notice of election and an authorization to reduce the judgment granted him by the sum of $1,617 (which he did), and entered money judgments against defendant Finley Mason in favor of Adams individually for $5,192.67, plus $3,605.99 interest, and for Adams as executor for $11,-872.70, plus $8,254.96 interest.

The factual background having been painstakingly set forth in detail in the two previous decisions of this Court, we need not restate or further delineate the facts except as may be necessary to a full understanding of the issues raised on this appeal.

■ On the second appeal we made certain rulings which became the law of the case. We decided that the beneficial title to the 187.375-acre tract was in Garland Adams and wife, subject to an indebtedness to the Masons of $2,710, with 5% interest; that plaintiffs Garland and Hedge should be charged with one half the total amount of principal and interest if paid by Finley Mason on the deeds of trust out of his personal funds, and that in the absence of satisfactory proof that these payments were made out of Mason's personal funds the inference is justified that the payments were made out of gross receipts from the farm operation and should be charged as a partnership expense; that Garland Adams and wife are the owners of the additional 27.5 acres described in the contract of July 29, 1938 on paying or being debited therefor at the rate of $58.80 per acre and that in the absence of other evidence the Masons are equitably entitled to be credited with $2,710.28, plus interest at 5% thereon for six years. We further ruled that Finley Mason had the duty to render an accurate accounting of the partnership; that he had failed to discharge his duty but that his failure should not keep plaintiffs from recovering whatever might be due them, and suggested that plaintiffs "needed only to come forward with some evidence which would circumvent the necessity for a detailed accounting but which, nevertheless, would furnish a reasonable basis for an equitable adjustment of the partnership operation." The opinion suggested that the issues might be resolved if plaintiffs adduced testimony which would show the average net income of the farm during the period involved, and also implied that plaintiffs might go on the "reasonable rental value" theory as a basis for the statement of an account between the partners.

Taking their cue from these suggestions plaintiffs on remand adopted the "average net income" method of adjusting the accounts. They introduced the testimony of Cecil Endicott, who farmed a tract of 200 acres adjoining the land in question and another 325-acre farm located a mile and a half distant. Mr. Endicott had farmed in that community all his life. He purchased the adjoining 200 acres in 1946 and operated the 325-acre farm in partnership with

another. He was engaged in an operation in which both pasture land and crop land were used in what he termed "balanced farming, cattle, hogs, and raising the various crops and feeding and selling the animals." He counted on feeding out 150–200 head of cattle per year and selling the remainder of the cattle off the pasture. He sold from 500–800 head of hogs per year, in a livestock operation. He did not sell the grain he raised but fed it, and his net profits were based largely on gains from the sale of livestock. In comparison to the Adams operation Endicott has "many more times livestock" and "several hundred head of hogs and quite a number of cattle" more than Adams. Familiar with the Adams farm, having been on it a number of times, the soil and drainage problems, he said that all of it was cultivable, and that the Adams soil, improvements and operation were comparable (very similar) to his. He did not know, however, how many acres of the Adams farm were devoted to corn, oats, or other grain; how many bushels of grain any particular field had produced, or how much hay had been harvested in any one year. He admitted that production depended upon the type of farming operation, weather, season, kind of seed, use or lack of fertilizer, spray, etc., and that the success or failure of a farming operation depends largely on the type of operator, whether he gives it personal attention, uses modern farming methods, etc.

Witness Endicott gave the gross and net income from his farming operations during the years 1946–1954. He testified that his land "averaged out very close to $20 a year income" per acre, farm land and pasture land and all combined; that when he put his land in corn the net profit was about $40 per acre per year, and that the Adams farm would produce as well as his farm if it was run right, that is, as economically and carefully as Endicott ran his farm.

The trial judge considered the testimony of the witness Endicott to be reasonable and, commenting that it was not refuted, accepted it and based the award to plaintiffs on the reasonably to be expected net return or profit of $20.00 per acre per year.

▮ Appellants' first point is that the court erred in substituting Garland Adams, Administrator of the Estate of Hedge Bland Adams, Deceased, in the place of the deceased as a party plaintiff, claiming that the action should be dismissed as to Hedge Bland Adams. Hedge died July 2, 1958, after the first remand and prior to the judgment from which the second appeal was taken. Garland was appointed administrator March 16, 1962. The first publication of letters of administration was March 23, 1962. The motion to substitute the administrator as a party plaintiff, filed August 10, 1962, was sustained on March 7, 1966. Section 507.100, subd. 1(1), V.A.M.S. and Civil Rule 52.12(a), V.A.M.R. provide that if a party dies and the claim is not thereby extinguished, the court shall on motion order substitution of the proper parties. Section 507.100, subd. 1(3), V.A.M.S. and Civil Rule 52.12 (c) provide that if the death of a party occurs prior to final judgment and before appeal and substitution *or motion therefor* is not made within nine months after the first published notice of letters of administration, the action shall be dismissed as to the deceased party. The death occurred prior to final judgment, while the matter was pending in the circuit court, and before appeal. A motion for substitution was made within nine months after the first published notice of letters. While the motion was not acted upon and the order of substitution not actually made until more than three years after motion was filed, this delay did not affect the legality of the action taken by the court. The statute and rule do not provide for dismissal of the action as to the deceased party in every case that *substitution* is not made within the nine-month period. It is sufficient if the *motion* for substitution *be made* within that period. Although the court acted on the motion tardily, the order of substitution was valid.

Appellants' second point is that the court erred in accepting and using the testimony of plaintiffs' witness Endicott as the basis of its calculations because Endicott was not qualified to express an opinion that the Adams farm would produce a yearly income of $20 per acre; that the success or failure of a farming operation depends upon the efficiency of the operator, the personal attention given and whether modern farming methods were used; that Endicott did not know what the Adams farm actually produced or how it was operated; that Endicott was engaged in a much more extensive livestock operation than that conducted on the Adams farm; and that in determining net profit Endicott did not take depreciation into consideration.

 There is no question that Endicott was qualified to testify as to the net yearly profit per acre from his own farming operations. He was an experienced farmer, 45 years of age, who had been farming all of his life, and had been farming the adjoining land since 1946. He farmed 525 acres from 1946–1954. He made and kept the records of income and expenses. He gave the number of dollars of gross and net profit for each of the years 1946–1954. Whether the testimony as to the productivity of the Endicott farm could be applied to the Adams farm would depend upon the similarity between the two farms in size, topography, soil conditions, improvements, type of operation, etc. There was substantial evidence of similarity in these respects. Endicott's lack of knowledge of how many bushels or bales per acre were actually produced on the Adams farm, what methods of operation were employed on that farm, and how efficiently the Adams farm was operated, did not prevent him from testifying. It is the comparative capacity to produce that is important. It is error in a condemnation proceeding to exclude evidence of relative productivity of comparable farms in the community, State ex rel. State Highway Commission v. Cook, Mo.App., 161 S.W.2d 691 [1]. Such evidence, admissible in a condemnation proceeding, by analogy was properly received in this proceeding. We observe, as did the trial court, that defendant Mason did not contradict or undertake to refute this testimony. There is another consideration. Defendant Mason, who was obligated to keep books and records from which an accurate accounting of the partnership operation could be made, breached his contract in this respect. By failing in this obligation he compelled his partners to resort to some other equitable method of estimating yields and arriving at a settlement. Necessarily such other methods, such as reasonable rental value or average net income reasonably to be expected, are less accurate and more indefinite tl.an properly kept books and records. In that situation the court will accept the best available evidence, notwithstanding it does not measure up to the usual requirements of strict proof, as long as it is substantial evidence. With reference to appellants' contention that the success or failure of a farming operation depends upon the efficiency, personal attention given and the farming methods adopted by the operator, and that Endicott lacked knowledge of the Adams operation in these respects, and therefore should not have been permitted to express himself, we have .this to say: A partner who has breached his duty to render an accurate accounting and who is held to account on the average net income theory will be held to a reasonable standard of efficiency and will be expected to account for estimated yields based upon modern methods of operation, such as Endicott is shown to have employed. We conclude that there was substantial evidence to support a calculation based upon average net income of $20 per acre per year for the period 1946–1954.

 Next, error is assigned in adjudging Garland and Mary Adams owners of the 187.375 acres, in providing for Garland's option to purchase the 27½ acres, and decreeing him the owner in fee thereof upon his election to reduce his judgment by $1,617. Appellants complain of this action by the court on the ground that it was

not shown that Garland has complied with the contract by paying his indebtedness to defendant Finley Mason, with interest; that the only issue before the court was that of the farm accounting, and therefore the court went beyond the issues in the case. These rulings are within the issues as framed by the pleadings. The petition sets up the interest of Garland and Mary Adams in the lands, asks for a determination of the rights of the parties therein, and prays for a decree granting to them their share of the property. The answer denies their interest, except as to the option to purchase created by the contract of July 29, 1938. More decisively, this point is res adjudicata, this Court having determined these matters on the second appeal.

Appellants' Point IV is that "The court erred in holding the plaintiffs were entitled to credit on the mortgage payments on the farm." This point is not well taken. The record shows that the court did not give plaintiffs credit for these payments but on the contrary held that *defendants* were entitled to credit for payments made by them on the mortgage indebtedness. The court, in its memorandum opinion denominated "Court's Findings and Rulings," in discussing "amounts to be charged against plaintiffs and as credits to defendants" and the amounts due plaintiffs, said, transcript p. 203: "This includes charges against plaintiffs on mortgage notes mentioned in contract or payments made on same by defendants." Under "Adjustment Credits and Balances of Parties" the following amounts are shown as "Owed defendant" or "Owed defendants" in the following years for mortgage payments and interest thereon: $620.05, 1938; $604.36 and $9.80, 1939; $594.61 and $9.18, 1940; $567.18 and $6.36, 1941; $8,389.74 and $386.88, 1942. Transcript pp. 204–205. At page 209 the court, referring to credits given defendants for payments due them, stated that "in the above schedule are deductions for mortgage note payments with interest." In the

"Court's Rulings on Motion for New Trial" the court, in support of its opinion, said, "The parties are informed in the opinion of the steps taken by the Court, setting out that most of the credits due defendants are returned checks, etc., found in defendants' Exhibit C–1 and A–16, through A–31. Credits due defendants for payments on mortgage notes were found in Exhibit, defendants', bearing notation 'Mortgage payments.'" The record does not support, but contradicts, appellants' contention under Point IV.

■ Finally, appellants urge that the court erred in its audit and calculations in finding that defendants were indebted to plaintiffs because Endicott's testimony that the farm should produce $20 per acre per year covered only the period 1946–1954; that what the farm produced from 1938 to 1946 is not shown by any testimony, or supported by any evidence whatever; that the audit, calculations and judgment of the court are therefore void, leaving nothing before the court except the accounting prepared by defendants' accountant Wiley, which accounting, based on the records produced by Finley Mason, shows that plaintiffs are indebted to defendants in the sum of $116,880.96. This point must be sustained in part. However lenient the courts may be in relaxing the requirements of strict proof in a situation of this kind, there must be some substantial evidence upon which to base an accounting; and however reluctant we may be to remand this case for a fourth trial, we see no acceptable alternative.

While Mr. Wiley did the best he could with the available material we are unable to accept his work product for the same reasons that the accounting prepared by his predecessor, Mr. Fleet, was rejected by the Supreme Court on the second appeal. 358 S.W.2d, l. c. 14. Wiley's audit does not agree with the income tax returns for the years involved, or with Fleet's audit, or with the referee's report in the second trial. We agree with the trial judge that "there is such

a lack of credible records that it is doubtful that an accurate audit could be made" and that "the failure to keep accurate records has resulted in a situation where a fair and accurate accounting cannot be made from the records provided the Court."

Defendant Finley Mason, who did not testify on the second trial, appeared and testified at the third trial, but his testimony was of little value in clarifying and explaining the accounts. He said he kept the books, "such as they are," but conceded that he was "not much of a bookkeeper"; that there was no regular accounting; that when Garland would ask how they came out on a sale of livestock he would ask him what he "had to have" and would give him a check for the money he needed at the time, not based on what was made in the transaction, but on immediate needs, calling it an "advance." He could not explain the discrepancy between his income tax schedule for 1943, which showed a $10,427 profit, and his accountant's report that the net profit for that year was $2,961. There was intermingling of funds. Mason was running several farms and a business. When he received money he put it in one account, if he did not spend it; he did not keep separate bank accounts for each one of his enterprises. He filed no partnership income tax returns. In his personal income tax returns he treated Garland and Bland as employees and reported as salaries the amounts paid them. The records he produced are fragmentary, incomplete, confusing, often incomprehensible and in many items suspect. Many checks bear notations made thereon years after the checks were issued. Much of the verification of checks depended upon memory and hearsay.

The trial judge, in a conscientious effort to arrive at a just result and to do equity as between these partners, wrote an exhaustive memorandum opinion analyzing the evidence and making his findings. On motion for new trial he wrote another opinion explaining his judgment in the light of the assignments of error in the motion. Although he labored long and hard we have concluded that the judgment must be reversed and the cause remanded for error in that part of the final accounting which takes into consideration a net profit of $20 per acre per year *for the years 1938 to 1946*. There is no evidence to support that part of the foundation of this judgment. The testimony of Mr. Endicott, which we have ruled sufficient to sustain that basis for the period 1946–1954, cannot be applied retroactively to the period 1938–1946. During the first part of the latter period we were coming out of a depression. During the latter part we were engaged in a war. It would be rank speculation, indeed it would contradict facts of which we may take judicial notice, to say that farm income in Clay County during those unusual years was the same as farm income in the postwar period 1946–1954, and that the average net income on the Adams farm was the same for both periods.

Accordingly, we confirm and uphold the trial court's accounting in all other respects, but because of the error noted the cause must be remanded for the sole purpose of conducting a hearing to determine the average net income (or loss) per acre per year reasonably to have been expected from the efficient operation of the Adams farm by the use of modern farming methods during the period 1938–1946, and for the reentry of the same judgment, or the adjustment of the amounts awarded in the judgment up or down, depending on whether the evidence shall indicate that the per acre year estimate for that period was the same, or more or less than that reasonably to be expected for the period 1946–1954.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

WELBORN, C., concurs.

HIGGINS, C., not participating.

 

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., and SEILER and HOLMAN, JJ., concur.

STORCKMAN, J., not sitting when cause was submitted.