Helmut STEIN, Plaintiff-Appellant,

v.

Paul JUNG, Defendant-Respondent.

No. 34676.

Missouri Court of Appeals, St. Louis District.

Feb. 27, 1973.

Klutho & Cody, St. Louis, for plaintiff-appellant.

Fortus & Anderson, Clayton, for defendant-respondent.

WEIER, Judge.

▮▮▮ Plaintiff Helmut Stein filed a suit for damages in two counts. In Count I he alleged that by reason of fraud and misrepresentation by defendant Paul Jung, he had been damaged in the sum of $12,335.18. In Count II he sought punitive damages on the ground that the false representations were maliciously made. In response, defendant Jung alleged the existence of a partnership between plaintiff and defendant; by his answer denied any fraud or misrepresentation; and by his counterclaim prayed for an accounting. Trial resulted in a judgment favoring defendant Jung. Plaintiff's initial contention on appeal attacks the judgment in this court tried case as being unsupported by the evidence. We, therefore, must review the case upon both law and the evidence. In this area as an appellate court we are instructed not to set aside the judgment unless it is clearly erroneous and due regard must be given the opportunity of the trial court to judge the credibility of the witnesses. But if the judgment is erroneous then we must order a new trial or a partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as the court ought to give. Unless justice requires otherwise, we must finally dispose of the case. As to issues in which no error appears, no new trial may be ordered. Rules 73.01(d), 84.-14, V.A.M.R.; Tallant v. Hamilton, Mo., 406 S.W.2d 599, 600[1]; Allison v. Dilsaver, Mo.App., 387 S.W.2d 206, 211[6].

To understand plaintiff's first contention, we recite a general statement of the facts. Defendant Paul Jung decided to enter into the purchase and operation of a coin operated cleaning and laundry establishment in St. Louis County. Jung discovered that the business was for sale in a conversation which he had with the owner, and by negotiation was able to reduce the price originally demanded of $65,000.00 to $50,000.00 plus the inventory. Jung had just sold a cleaning business to a Mr. and Mrs. Richard Johns for $85,000.00 and had received back a note secured by chattel mortgage on the business in the amount of $58,000.00. In selling the business to Mr. and Mrs. Johns he had entered into an agreement with them that he would not compete within an area that included the location of the proposed business. When Mr. and Mrs. Johns told Jung that they expected him to live up to this agreement, he then decided to approach plaintiff Helmut Stein with the thought that Stein would actually carry on the business and that Jung would be a silent partner and would finance the purchase of the business. The essential agreement between plaintiff and defendant was that plaintiff would operate the business, pay $1,000.00 per month out of the proceeds on the loan, and would receive for his services the sum of $750.00 per month. All profits over and above this charge would be divided equally between the plaintiff and defendant. Jung found that he and Stein could borrow $55,000.00 from the Tower Grove Bank and Trust Company after he, Jung, had submitted a financial statement and had indicated that he would pledge as collateral the note and chattel mortgage which had been executed to him by Mr. and Mrs. Johns. The note to Tower Grove Bank and Trust Company had to be signed by both Jung and Stein, and their wives. Acting upon this commitment, the note was executed and the bank loan was made to buy the business. In order to avoid any dispute with Mr. and Mrs. Johns concerning the agreement not to compete, Jung instructed the seller of the business to make out the bill of sale in the name of plaintiff Helmut Stein. The bill of sale was dated March 31, 1966 and except for three weeks beginning April 13, 1966, when Stein had to go to Europe to attend the sick bed of his father, Stein was in complete control of the business. The only connection that Jung ever had with

the business operation was during this three week period when he managed it in Stein's absence. During this time he received pay at the rate of $750.00 per month, the same rate that was to be paid Stein. There is much detail in the record concerning the transactions between the parties both before and after the inception of the business on March 31, 1966. In order to avoid unnecessary length in the opinion, these facts will not be referred to except as they might bear upon the points presented on appeal.

On February 26, 1969 the first court hearing was held in the case. At that time the parties filed a stipulation which also bore the signature of the trial judge in which it was agreed that the plaintiff's cause of action for fraud and misrepresentation would be held in abeyance. The trial would be commenced on defendant's counterclaim without prejudice to the plaintiff's right to proceed on his cause of action in the event that the issues therein could not be resolved in the accounting proceeding under defendant's counterclaim. At the conclusion of the first day of hearing the court ordered that an accounting be made by an accountant selected by the defendant, and upon completion of the audit a copy of the audit would be provided to the plaintiff or plaintiff's counsel, and that the case would then be reset upon the application of either party for further hearing. On April 16, 1969 a further hearing was held in the case and at its conclusion the court determined that a partnership relation existed between the parties beginning March 31, 1966 and had not been dissolved. The hearing on the accounting was ordered to commence June 9, 1969. There is no record of any hearing on June 9, 1969, but on July 17, 1969 further proceedings were had. At that time the court was presented by plaintiff with an application for dissolution and other relief. The court ordered this filed and stated in open court: "* * * The Court is simply filing the matter at this time as indicated to counsel; that it is a matter to which responsive pleadings will be required and a hearing held before that matter can be determined." It was made known to the court that the plaintiff had turned all business records over to the defendant for the purpose of making an audit, and the court thereupon proceeded to hear further evidence. At the conclusion of this hearing on July 17, 1969 a memorandum was executed by attorneys for plaintiff and defendant and signed by the judge indicating that the case relating to an accounting by plaintiff to defendant through December 31, 1968 was heard, and that both parties requested findings of fact and conclusions of law. On January 27, 1972, some 2½ years later, the court entered its findings and conclusions. The judgment as amended determined that the plaintiff owed defendant the sum of $12,140.68 with interest at 6% per annum from December 31, 1968. Judgment was also rendered in favor of defendant on plaintiff's petition. No mention was made of the application for dissolution.

Plaintiff's contention on appeal that the evidence does not support the judgment centered about the accounting evidence introduced in the case during the third hearing on July 17, 1969. At this time two certified public accountants testified. One was employed by defendant Jung. He took as his accounting period the time from April 1, 1966 through December 31, 1968. Instead of breaking down the amounts for each year involved, he testified to total receipts and expenses for the period from April 1, 1966 through December 31, 1968. Although this accountant had prepared statements of account, they were merely referred to and were not introduced in evidence. .

The other accountant, who had been taking care of the records of the business prior to its sale to the partners, and who was called as a witness by plaintiff, approached the problem of the accounting from a different basis. He prepared four separate statements, the first for the nine months of 1966, the next two for each of the years 1967 and 1968, and the fourth for the first six months down to July 1, 1969. These were introduced in the evidence.

From the evidence introduced on the accounting and the findings of the court, we have assembled the amounts established by the two accountants and the court, and present them in columns so they may be compared.

| 1966–Last 9 months | Defendant's C.P.A. | Plaintiff's C.P.A. | Judge's Findings |
|---|---|---|---|
| 1. Gross Receipts | * | $ 50,562.65 | $ 50,562.65 |
| 2. Expenses | * | 42,204.68 | 44,063.07 |
| 3. Net Income (Adjusted) | $ 6,539.58 | 8,357.97 | 6,499.58 |
| **1967** | | | |
| 1. Gross Receipts | * | 58,570.32 | 58,948.04 |
| 2. Expenses | * | 50,796.99 | 47,331.15 |
| 3. Net Income (Adjusted) | 11,616.89 | 7,773.33 | 11,616.89 |
| **1968** | | | |
| 1. Gross Receipts | * | 59,043.31 | 59,536.86 |
| 2. Expenses | * | 48,795.08 | 48,559.87 |
| 3. Net Income (Adjusted) | 10,976.99 | 10,248.23 | 10,967.99 |
| **SUMMARY** | | | |
| 1. Gross Receipts | $169,047.55 | $168,176.28 | $169,047.55 |
| 2. Expenses | 135,629.89 | 141,796.75 | 139,954.09 |
| 3. Net Income | 33,417.66 | 26,379.53 | 29,084.46 |
| ***(Adjusted) | 29,133.46 | | (**29,093.46) |

\* Defendant's C.P.A. did not testify to these amounts. They were represented in the summary for the entire period.

\*\* Simple subtraction indicates this amount to be correct.

\*\*\* "Adjusted" indicates the accountant arrived at the figures after reversing certain expenses on the books to income or accounts due.

───────◆───────

■ It is obvious that the court adopted the gross receipts testified to by defendant's accountant of $169,047.55. We are at a loss, however, to find any evidence to sustain the court's determination of total expenses of $139,954.09. Defendant's accountant on the one hand set the total expenses at $135,629.89, and the profit and loss statements of the other accountant for the same period indicate total expenses of $141,796.75. Neither is there any indication that the court made any allowance for the payment of $750.00 per month to Stein for his services, which as between the partners should appear as an expense prior to determining any net which might be divided between the partners. If we had the benefit of the work of defendant's accountant before us, we might be in a position to determine a basis for the court's determination of net profit. We have not been favored with this because the statements were not introduced in the evidence. All that we have are general figures which, at least as to the expenses, do not support the court's findings. As stated in Adams v. Mason, Mo., 421 S. W.2d 276, 281: "However lenient the courts may be in relaxing the requirements of strict proof in a situation of this kind, there must be some substantial evidence upon which to base an accounting; and however reluctant we may be to remand this case for a fourth trial, we see no acceptable alternative." Just as in *Adams,* supra, this case is in a position where it will have to be returned to the trial court for a rehearing.

■ The second point raised by plaintiff on appeal is that the court erred in failing to find that the partnership was never validly formed, or in the alternative that it was dissolved by operation of law. This contention is based upon these numerous grounds: a) defendant's alleged fraud

and misrepresentation and unlawful appropriation of funds; b) defendant's failure to perform in accordance with the original oral agreement; c) defendant's failure to contribute capital; d) defendant's failure to enter into a written agreement; e) plaintiff's termination of any partnership by letter of June 7, 1966; and f) insolvency of the alleged partnership evidenced by foreclosure of assets by the Tower Grove Bank and Trust Company in December of 1969 as alleged in plaintiff's verified motion for a new trial. As has been previously stated, the court found that a partnership had been validly formed beginning March 31, 1966. This is fully supported by the evidence, both parties having testified that a partnership existed between them whereby after the payment of $750.00 per month to Stein they were to divide the profits one-half each. A partnership is created by contract between the persons who become partners. This agreement, however, may be either oral or written, verbally expresssed or implied from the acts and conduct of the parties themselves. The primary criterion to be applied in determining whether a partnership has been created is that of the intention of the parties. Schneider v. Schneider, 347 Mo. 102, 146 S.W.2d 584, 588[5, 6]. Whether a fraud may have been committed by one of the partners upon the other at or prior to the inception of the partnership is immaterial under the facts of this case to resolve this contention because the partners themselves formed a partnership, purchased a business, and commenced operating the business as partners. Furthermore, by suing for damages occasioned by the fraud, plaintiff in effect affirmed the contract of partnership. Auffenberg v. Hafley, Mo. App., 457 S.W.2d 929, 935[13]. The partnership, however, was dissolved by plaintiff Stein on June 7, 1966 when he notified defendant Jung by letter that since Jung has failed to contribute a certain amount of money to the partnership and had taken partnership funds without authority, Stein was refusing to enter into the partnership business; and further that Jung would have no interest in the business. Stein overlooked the fact that he had already entered into the partnership by his oral agreement and had commenced operation of the partnership business. His expressed intention to divorce his partner, however, from any further connection with the business was an act of dissolution under § 358.310(1)(b), RSMo 1969, V.A.M.S. This section and subsection provides that dissolution is caused by the express will of any partner when no definite term or particular undertaking is specified. The express will of Stein as shown by this letter would prevent the continuance of the partnership. The Uniform Partnership Law adopted by Missouri is Chapter 358, RSMo 1969, V.A.M.S.[1] § 358.290 defines dissolution as being a change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business. § 358.300 provides that on dissolution a partnership is not terminated but continued until the winding up of the partnership affairs is completed. § 358.380 provides that a partner has a right to receive his net interest in the partnership upon the winding up of the affairs. Where one partner has been expelled by another, and the expelling partner continues the business without winding up the affairs of the partnership, § 358.410 protects the interest of the creditors in the partnership, and § 358.420 places a partner in the position of a creditor as to the amount of his interest in the partnership on the date of dissolution. He is entitled to receive an amount equal in value to the interest which the expelled partner has as of the date of dissolution, together with interest thereon, or at his option, in lieu of interest, he may choose the profits of the business attributable to the use of his interest therein and the continuing business of the partnership. Schoeller v. Schoeller, Mo.App., 465 S.W.2d 648, 655. Here the defendant Jung has

---

1. Unless otherwise specified, all statutory references are to RSMo 1969, V.A.M.S.

elected in his counterclaim to receive a division of the profits. § 358.300 contemplates that upon dissolution there must be a winding up of the partnership affairs. And since the partners have failed to agree upon a mode of winding up and settlement of the affairs of the partnership, it will be necessary that the court supervise this winding up of the affairs of the partnership and the liquidation of the partnership business. Rules for distribution are set out in § 358.400 which may be used by the court to guide it in this phase of the final dissolution of the partnership.

 We now turn to the disposition of the petition for damages for fraud and misrepresentation, the filing of which commenced this litigation. Plaintiff in his third point on appeal contends the court erred in denying him a hearing on his petition. The court in its judgment determined that where the petition seeks a determination of legal rights but a counterclaim seeks equitable relief, the case must be transferred to the equity docket for trial; and further, if a disposition of the equity issues disposes of plaintiff's entire claim, then final judgment on all of the issues should be rendered by the court in equity. Burnett v. Johnson, Mo., 349 S.W.2d 19 was cited as authority for this ruling. With respect to partnerships, controversies and claims between members of the firm come under one of the heads of equity jurisdiction. Usually the partners must seek relief against each other in equity. But there are exceptions to this rule. If only one matter or item is in dispute between the partners, an action at law may be maintained on this item even though there has been no settlement of the firm's affairs or a balance struck on an accounting. Thus in Gilliam v. Loeb, 131 Mo.App. 70, 109 S.W. 835, it was determined that where a partner misrepresented the price of a jack to his partners, he was subject to a suit at law for money had and received

based upon fraud and deceit. In that case there was no counterclaim seeking an accounting, nor was there a petition for dissolution of the partnership. Here both are present and the court conducted an accounting as to the partnership business. In the determination of the interests and rights of the partners to the assets of the property, it is of course incumbent upon the court to determine the capital account of the partners. And so, original contributions of the partners which occurred during the formation of the partnership are involved in this accounting. The fraud and deceit complained of by Stein in his petition against Jung arose out of negotiations between the parties and proposals made during this formative period, and a determination as to those facts must be made in order to complete the accounting, particularly the capital accounts of the partners. The determination of the lower court that the cause of action alleged in the petition must be determined by the court as a court of equity is consistent with the law under the facts of this case. The facts in connection with the alleged fraud were controverted and a determination of fraud depended upon the evaluation of controverted evidence by the trial court. On the one hand, it was contended the sales price was represented to be higher than it was. On the other, the high figure was alleged to be the true value of the business. An advance of money was declared by one to be a capital contribution and by the other a loan to the other partner. With a determination of the facts largely dependent upon credibility, we defer to the findings of the trial court and affirm the judgment in favor of defendant on plaintiff's petition.

 As stated before, the judgment in favor of defendant and against plaintiff on the defendant's counterclaim must be set aside. The accounting must encompass the life of the partnership down to and in-

cluding the winding up of the business. Upon retrial of the accounting, the court should make a thorough re-examination as to the charge of legal fees to determine whether the charges made therefor were to compensate services rendered to plaintiff Stein or to the partnership. A clear determination should be made with regard to withdrawals made by plaintiff Stein and any payments out of partnership funds to Jung. Under the partnership agreement Stein was to receive $750.00 per month for his services in connection with the operation of the partnership business. If he made any additional withdrawals, which his testimony seems to indicate, they should be charged against his share on distribution. The affairs of the partnership should be wound up and a distribution made in accordance with § 358.400. In an affidavit annexed to the motion for new trial filed by plaintiff Stein, it is alleged that the Tower Grove Bank and Trust Company foreclosed on the equipment of the partnership in December of 1969. Since Stein took over the operation of the partnership business effective June 7, 1966, the date of his letter to Jung, he operated the same in a fiduciary capacity and must be held accountable for any of his actions in connection therewith leading up to the foreclosure and the disposition of the property at the foreclosure sale. If a partner wrongfully excludes another from the partnership business and then takes unto himself the assets of the firm, he becomes as to the excluded partner a trustee ex maleficio. Schneider v. Schneider, *supra,* 347 Mo. 102, 146 S.W.2d 584, 589[19].

The judgment in favor of defendant against plaintiff on plaintiff's petition is affirmed. The judgment in favor of defendant against plaintiff on defendant's counterclaim is reversed and the cause remanded for retrial in accordance with the views expressed in this opinion.

DOWD, C. J., and McMILLIAN, J., concur.